BUILDING AND LOAN ASSOCIATION OF DAKOTA v. RICHARD GRIFFIN
ET AL.

Decided March 15, 1897.

1. Building and Loan Association—Contract—Practice on Appeal—Matters Omitted in Brief.

In a proceeding to foreclose a mortgage given to a building and loan association, a provision in the contract that, on default in payment, the whole sum, less what had been paid such association for monthly dues on its shares, should, at its election, become immediately due and payable, was omitted from the briefs of counsel for the association and not supplied by those of their adversaries. Held:

(1) Since the Court of Civil Appeals awarded foreclosure for a debt not due, save by this provision of the contract, it would be presumed to have been considered by them, and would be considered and the credit provided for thereby allowed upon writ of error by the Supreme Court. (Pp. 485, 486.)

(2) The right to this credit did not depend upon whether the debt was usurious, but resulted from the election to declare the debt due under the provisions of the contract, and the mortgagors, by virtue of such election, were entitled to a credit for the amount paid by them as dues upon the stock. (P. 486.)

2. Attorney's Fees—Legal Proceedings.

When a trustee's sale under a mortgage given to a building and loan company was enjoined on the ground that the premises were homestead and the claim usurious, the company, obtaining in reconvention a foreclosure upon their mortgage, were entitled to the benefit of a provision in their mortgage for the recovery of attorneys' fees on the amount found due though the claim they were seeking to enforce by the trustee's sale was usurious. (Pp. 486, 487.)

3. Building and Loan Association—Usurious Contract.

A holder of stock in a building and loan association borrowed $1300, giving bond to pay interest thereon at six per cent per annum and a premium of $1300, making $2600. He might also discharge the obligation by payment of the $1300 with interest and surrender of his 26 shares of stock, after paying annual dues thereon until they became fully paid out and of the value of $100 per share. Held, that such contract was usurious. (P. 487.)

4. Usurious Contract—By What Law Governed.

A building and loan association, a corporation created by the laws of Dakota, having established itself in Texas under a permit from the State to do business therein, for a period of ten years, loaned money to a resident of Texas, one of its members, under a contract made in and usurious by the laws of that State, but valid under those of Dakota. The obligation was made payable in Dakota but was secured by a mortgage upon real property in Texas. Held, that such contract was, upon its face, one intended to be enforced in Texas, and made payable elsewhere in evasion of the usury laws of this State, and that it should be held to be usurious. (Pp. 487 to 491.)

ERROR to Court of Civil Appeals, Fifth District, in an appeal from Dallas County.

C. W. Starling, for plaintiff in error.—A bond given a building and loan association by a holder of stock therein to be matured by regular monthly payments and by the profits apportioned to such shares, in which bond the borrower obligates himself to pay the amount loaned with interest thereon at 6 per cent. per annum, together with an additional sum as premium equal to the said amount loaned, such principal sum and premium being, by the terms of said bond, payable by the maturity and the surrender of such matured stock of the par value of the principal sum and premium thus agreed to be paid, is not usurious when the number and aggregate amount of payments necessary to mature such shares

is contingent upon the profits of the association, and the consequent earnings apportioned to such shares, and is therefore uncertain and cannot be foreseen at the time of making such obligation, and when it cannot be determined by the contracts made by the borrower and lender. Abbott v. B. & L. Assn., 23 S. W. Rep., 632; I. Association v. Biering, 23 S. W. Rep., 625; Same cases, Texas Supreme Court, 25 S. W. Rep., 620-623; Reeve v. Ladies' Association (Ark.), 19 S. W. Rep., 918.

The bond sued on, while not usurious, is non-enforceable to its full extent, but is enforceable in equity to the extent of the amount loaned with legal interest thereon. Gillmour v. Ford, 19 S. W. Rep., 443; Dugan v. Lewis, 79 Texas, 246; Tilley v. Assn., 52 Fed. Rep., 618; Field on Damage, sec. 153; Tyler on Usury, 213 et. seq.

In building and loan association loans in this State the stock subscriptions constitute a separate and distinct contract and liability, and the stockholder's rights and liabilities are determined by his rights as a shareholder exactly as if he were not a borrower. Building and Loan Association of Dakota v. Logan, 33 S. W. Rep., 1088; Sweeney v. El Paso Assn., 26 S. W. Rep., 291; Blakeley v. El Paso Assn., 26 S. W. Rep., 292; Heady v. Bexar Assn., 26 S. W. Rep., 469.

Where a resident of Texas who for several months prior thereto has been a member of a building and loan association incorporated under the laws of and doing business in Dakota, but having a permit to do business in Texas, bids a premium and executes a bond to such association to mature his stock therein, in consideration of an advance to him thereon, and where his application for the loan and the bond stipulate that the contract for repayment is to be performed in Dakota, by whose laws it is provided that such contract is not usurious, then such contract is not usurious in Texas. Such contract will, however, be enforced only to such an extent as the equities of the case may require. Dugan v. Lewis, 79 Texas, 246; Nat. Mut. Assn. v. Ashworth, 22 S. E. Rep., 521; B. and L. Assn. v. Logan, 66 Fed., 827, 14 C. C. A., 133; Wharton on Conflict of Laws, secs. 401, 411; Story on Conflict of Laws, secs. 280, 291; Jones on Mortgages, sec. 659; Railway v. Bank, 12 Wall., 226-230.

Appellant is entitled to a judgment and lien for an attorney's fee equal to ten per cent of the amount due upon the bond.

The Court of Civil Appeals did not err in declining to consider the homestead question in the absence of a cross assignment. Willis v. Smith, 72 Texas, 545.

The Abbott and Biering cases, 86 Texas, 467 and 476, should be overruled. Endlich on B. & L. Associations, secs. 365, 366, 523, et seq.; Strohen v. Association, 115 Pa. St., 273; B. & L. Assn. v. Logan, 33 S. W. Rep., 1089; Assn. v. Wagner, (Ind.) 23 N. E. Rep., 689; Reeve v. Assn., (Ark.) 19 S. W. Rep., 918; Roberts v. Assn., (Ark.) 36 S. W. Rep., 1085.

It is settled law in this State that, in the absence of a contract provision to the contrary, the borrower has no right to have monies paid on stock dues credited on the amount due on the loan paper. Association v. Lane, 81 Texas, 369; Sweeney v. El Paso Assn., 26 S. W. Rep., 291;

Blakeley v. El Paso Assn., 26 S. W. Rep., 294; Building Assn. v. Logan, 33 S. W. Rep., 1088.

That attorney's fees should be allowed, Spann v. Sterns, 18 Texas, 556; Carden v. Short, 31 S. W. Rep., 248.

*Seay & Seay*, for defendants in error.—The Court of Civil Appeals erred in its conclusions of law in holding that the District Court erred in crediting the loan in this case with any sum except the interest paid, thereby holding that said loan was not entitled to be credited with the payments made on the shares of stock, and in directing the judgment below to be reformed accordingly. B. & L. Association v. Biering, 25 S. W. Rep., 623; B. & L. Association v. Rising, S. W. Rep., 147.

The Court of Civil Appeals erred in its conclusion of law that the association was entitled to a foreclosure of its lien for the fines and dues unpaid on the stock and in directing the judgment of the District Court to be reformed accordingly.

The Court of Civil Appeals erred in not reviewing the action of the District Court and declining to hold that the premises in controversy were the homestead of plaintiffs in error, and in not finding and adjudging that the same was their homestead, and that the association had no lien thereon under the trust deed.

1. The Court of Civil Appeals did not err in sustaining the trial court in its instruction that the loan contract in this case is usurious. That such contracts are usurious has been too often held for us to cite authorities in support of the action of the trial court and the Court of Civil Appeals. Abbott v. Bldg. & Loan Assn., 25 S. W. Rep., 620; Bldg. & Loan Assn. v. Biering, 25 S. W. Rep., 622; B. & L. Assn. v. Logan, 33 S. W. Rep., 1088; 86 Texas, 467; 68 Texas, 283.

2. The Court of Civil Appeals did not err in declining to hold that the laws of South Dakota should govern the courts of Texas in determining whether or not the said contract is usurious. The B. & L. Association was transacting business here, the borrowers resided here, the property involved is located here, the contract was made here and was being sought to be enforced here. It is manifest that the attempt to establish the doctrine that the laws of South Dakota should govern is merely an attempt to evade the usury laws of the State of Texas.

BROWN, ASSOCIATE JUSTICE.—This suit was instituted by Griffin and wife against the Loan Association and C. W. Starling as trustee, seeking an injunction to restrain them from selling a certain piece of real estate under a power conferred by deed of trust executed by Griffin and wife to secure the Loan Company in the payment of the obligation hereinafter stated.

Plantiffs allege that the premises about to be sold constituted their homestead and was not subject to the lien in the deed of trust, and that the loan for which it was about to be sold was usurious and upon which they had paid the sum of $641.70; the sum loaned being $1300.

The defendants answered denying that the premises were the homestead of the plaintiffs at the time the loan was made; and alleged that the plaintiffs represented the premises not to be their homestead, and at the time designated other lots as their homestead, and were therefore estopped from asserting homestead rights, if any existed.

The defendant Building & Loan Association reconvened, praying for a foreclosure of the deed of trust to the amount of $1300, with interest thereon at six per cent per annum from the time default in payment of interest had occurred, and also plead that plaintiffs had subscribed for twenty-six shares of stock in said association and that there were dues and fines unpaid which, according to the terms of the said stock and the by-laws of the association, constituted a lien upon the said stock, and asked for a foreclosure of the lien on the stock.

Defendant also set up that the contract was to be performed in South Dakota; that under the laws of that State it was not usurious.

Upon the trial the court directed a verdict sustaining the deed of trust and the plea of usury, giving to the Building & Loan Association judgment for $658.30 after crediting the original loan with the amounts paid by the plaintiffs, and also foreclosed the lien in favor of the Loan Association on the premises in question for the sum of $658.30, from which judgment the Loan Company appealed.

The facts found by the Court of Civil Appeals are substantially as follows: About November 30, 1890, Griffin subscribed for twenty shares of stock in the Building & Loan Association of Dakota as an investment, and on the 30th of August, 1892, he subscribed for six shares of the said stock, each of the shares of stock of the nominal value of $100; and on August 30, 1892, he borrowed of the said association the sum of $1300, entering into a bond to pay the association the sum of $2600 at its home office in Aberdeen, S. D. The bond recited that Griffin had bid the sum of $1300 as a premium for the advancement of the $1300, by way of anticipation of the value, at their maturity, of the twenty-six shares of capital stock. The bond provided that if Griffin and wife should pay or cause to be paid to the association at its home office, on or before nine years from the date thereof, the sum of $2600, with interest on $1300 at the rate of six per cent per annum from the first day of September, 1892, until paid, or should cause to be paid unto the said association at its home office the sum of $15.60 on the first day of each and every month thereafter, as monthly dues on the said twenty-six shares of the capital stock of said association, and shall well and truly pay or cause to be paid all installments and interest on the $1300 and all fines which should become due on the said stock until said stock becomes fully paid and of the value of $100 per share, and shall then surrender said stock to said association, the obligation given should be void.

At the same time, that is August 30, 1892, Griffin and wife gave a deed of trust on the property in controversy to secure the payment of the said bond, which was duly acknowledged by Griffin and his wife.

The deed of trust confers power upon the trustee to sell in case of default in the payment of any interest or monthly dues for the period of six months, and contains the following clause: "And the said party of the first part further agrees that if by reason of any default in the above conditions this deed of trust is foreclosed by an action in court, an attorney's fee of ten per cent of the whole amount due and unpaid shall become due from the said first party to the said third party (the Loan Company) immediately upon the filing of suit for foreclosure in court, and this deed of trust will stand as security therefor.

At the same time Griffin delivered to the association the twenty shares of capital stock which he held before the loan and the association retained the six shares issued to him at that time. At the time of the loan Griffin had paid in, on the twenty shares of stock, $12 per month for twenty-one months, making $252, and a membership fee of $20. Afterwards he paid as interest on the money borrowed $6.50, and dues on the twenty-six shares of stock $15.50, making $22 monthly for seventeen months, aggregating $374, and a membership fee of $6. The amount paid as interest was $110.50; the amount paid as dues on the stock $518.50, aggregating $629.

The laws of South Dakota in reference to such corporations provide as follows: "No interest, fines or premiums that may accrue to said corporations according to the provisions of this act, shall be deemed usurious, and the same may be collected as debts of like amount now by law collectable in this Territory."

The Court of Civil Appeals found that the contract was usurious; that Griffin had made default in the payment of his dues and interest, except as to the amount stated; and that the association had a lien on the premises specified in the deed of trust, and also that it had a lien upon the stock for the unpaid dues and fines according to its by-laws.

Counsel for the Loan Company, the appellant in the Court of Civil Appeals, made a statement in his brief of the material evidence introduced upon the trial in the District Court, in which statement was embraced the bond given by Griffin and wife to the Loan Company, except the following provision: "That if at any time default shall be made in the payment of said interest or the said monthly dues on said stock for the space of six months after the same or any parts thereof shall have become due * * * * * that then, in such case, the whole principal sum aforesaid shall, at the election of said association, its successors or assigns, immediately thereupon become due and payable, and the sum of $2600, less whatever sum has been paid said association, as and for the monthly dues on said twenty-six shares of capital stock, at the time of said default, may be enforced and recovered at once as liquidated damages."

The appellant assigned as error, which was embraced in its brief, the action of the District Court in directing the jury to give credit to Griffin and wife for the amounts paid as dues on the stock.

Counsel for appellees Griffin and wife filed a brief in the Court of

Civil Appeals which contained no correction of the statement of the evidence as made by the appellant concerning the contents of the bond, and the provisions of the bond as quoted above were first called to the attention of the Court of Civil Appeals in the motion for a rehearing filed by Griffin and wife in that court. Each party has applied to this court for a writ of error to the Court of Civil Appeals.

The application of Griffin and wife assigns four grounds of error, which we state in substance as follows:

1. That the Court of Civil Appeals erred in holding that the appellant had a lien upon appellee's stock in said company for unpaid dues thereon, and for fines imposed, and also in foreclosing such lien upon the stock.

2. In holding that Griffin and wife were not entitled to have the amount paid by them to the Loan Company as dues upon their stock in said company credited on the debt, and in so reforming the judgment of the District Court as to deny to the appellees a credit for the amount so paid.

The fourth ground assigned calls in question the correctness of the decision of the District Court upon the question of homestead in the property sought to be subjected to sale, but this question was not assigned by appellees in the Court of Civil Appeals, and therefore cannot be reviewed in this court.

The Building & Loan Association in its application for writ of error specified the following grounds of complaint against the judgment of the Court of Civil Appeals:

1. That the Court of Civil Appeals erred in sustaining the trial court in its instruction that the contract sued on is usurious.

2. That the Court of Civil Appeals erred in not holding that the law of South Dakota should govern in determining whether or not the contract is usurious.

3. The Court of Civil Appeals erred in not allowing appellant an attorney's fee of ten per cent of the amount secured by the deed of trust lien, and in not awarding foreclosure for such additional amount.

If Griffin and wife are entitled under the contract to have the payments made as dues on the stock deducted from the debt, then the first ground of error presented by them will become unimportant, because the crediting of such payments would necessarily cancel the stock and leave nothing upon which to foreclose a lien. If the right exists to have the credit placed upon the debt and the unpaid dues were recovered in this action, the amount would go as a credit upon the debt and the result would be the same.

The Loan Company insists that we cannot look to that portion of the contract which its counsel omitted from his brief filed in the Court of Civil Appeals to determine whether Griffin and wife are entitled to the credit, because the omission was not corrected by the attorneys for appellees, Griffin and wife, before submission of the case in that court and, under the rules of the Court of Civil Appeals, it was authorized to decide

the case upon the statement made in the appellant's brief when un-challenged by the appellees. The contract is made payable at nine years from November 30, 1890, and consequently would not be due at this time if it did not contain the clause in question. If the Court of Civil Appeals had not looked to that clause of the contract it could not have rendered judgment in favor of the Loan Company for its debt and foreclosure of its lien, because the debt otherwise would appear not to be due. We therefore conclude that the Court of Civil Appeals did consider the whole contract as evidence before it. The Loan Company in this court insists upon a judgment against Griffin and wife for attorneys' fees, which we cannot award if the debt be not due. The very facts upon which the Loan Company insists upon a judgment in this court for attorneys' fees, and upon which it obtained judgment in the Court of Civil Appeals, give the right to Griffin and wife to have the payment on stock deducted from the debt. The part of the contract objected to cannot be regarded as evidence for one purpose and disregarded for another.

By the terms of the contract between the parties, the Loan Company had the right, upon failure of Griffin and wife to pay interest on the $1300 and dues on the stock for a period of six months, to elect to declare the debt due and to proceed for its collection, with the express provision that, in such event, the sum paid by Griffin and wife upon the stock should be deducted from the amount of the debt. Griffin and wife failed to pay interest on the debt and dues on the stock for six months, and the Loan Company exercised its right to declare the debt due for the sum loaned, $1300, and having exercised that privilege it thereby virtually declared that the sum paid as dues on stock should be credited upon the amount due on the $1300. Peoples Bldg. & L. Assn. v. Billing, 62 N. W. Rep., 373.

The right to the credit does not depend upon the question of whether the debt is usurious or not, but results from the election to declare the debt due under that provision of the contract. We therefore conclude that in any event Griffin and wife are entitled to a credit upon the $1300 to the amount paid in by them as dues on the stock.

The contract provided in substance that if, by reason of any default in the performance of its conditions, the deed of trust should be foreclosed by action in court, an attorney's fee of ten per cent of the whole amount due and unpaid should be allowed to the Loan Company. The defendants, Griffin and wife, claim that the attorneys' fees should not be allowed in this case, because the Loan Company was proceeding to sell the land for a debt that was usurious and for more than was really due upon the contract. It is not denied that the conditions were broken in the failure to pay the dues upon the stock as provided by the terms of the contract, which authorized the Loan Company to elect to enforce it, and Griffin and wife enjoined the enforcement of the debt for any sum whatever upon the ground that the land sought to be sold under the deed of trust constituted their homestead, by which they brought the Loan Company into court and compelled it to litigate its right to a lien upon the

land as well as its right to collect any portion of its debt. By contesting the validity of the lien, Griffin and wife forced the Loan Company to establish its validity and enforce it in court. Under these circumstances the Loan Company had the right to reconvene and ask a foreclosure of the deed of trust by a judgment of the court, and we think that the ten per cent attorneys' fees became rightfully a part of the contract when the Loan Company was thus placed in position to make it proper that it should seek the judgment of the court for the enforcement of that instrument.

We do not think there can be any doubt that this contract is usurious upon its face if it is to be governed by the laws of Texas. Griffin and wife borrowed $1300 from the Loan Company and agreed to pay six per cent interest thereon, the payments to be made monthly, and in addition thereto bound themselves absolutely to pay at the end of nine years the sum of $2600 in discharge of this debt. The $1300 to be paid over and above the amount borrowed could have been for nothing except for the use of the money actually borrowed. It was therefore interest upon that sum for nine years, which being distributed through that period of time gives $144.44 per annum; to which add $78 paid as interest upon the $1300, and we have the sum of $222.44 to be paid each year for the use of the $1300,—equal to a rate per cent exceeding seventeen per cent per year. Abbott v. Building & Loan Assn., 86 Texas, 467.

The Loan Company insists that the validity of the contract in question is to be determined by the law of Dakota because it is expressed that the money is to be paid in that State. The law of that Territory (it was then a Territory), provided that the taking of premiums, fines, forfeitures and the like by building and loan associations shall not constitute usury. If we are to apply this law to determine whether this contract is usurious, it would admit of no question, for its terms are broad enough to allow the Loan Company to take any amount in the way of premiums, fines, forfeitures, etc., that it might be able to extort from its borrowers. If, however, the laws of Texas are to govern in the solution of the question, then there is as little doubt that it is as grossly usurious as any contract which has come under examination in this court.

The Building and Loan Association of Dakota, a corporation organized under the laws of that Territory, procured from the State of Texas the following permit to do business in this State:

"THE STATE OF TEXAS,

"Department of State.

This is to certify that the Building & Loan Association of Dakota, incorporated under the laws of the Territory of Dakota, for the purpose of doing a general building and loan association business, and any and all things necessary or incidental to the prosecution of said business, with an authorized capital stock of $500,000, has this day filed in this department a certified copy of its articles of incorporation, in accordance with

the requirements of an Act of the Twenty-first Legislature of the State of Texas, approved April 3rd, 1889, and I further certify that said corporation has this day paid $100, the amount of the fee prescribed by said act; and I hereby declare that said corporation, having complied fully with the law, is entitled to and is hereby granted the permission to carry on its business in this State in accordance with the provision of said Act of April 3rd, 1889, for the term of ten years from the date hereof, in accordance with the purpose herein specified.

Witness my official signature and seal of State, affixed at the city of Austin, on the 9th day of November, A. D., 1889.

J. M. Moore, Secretary of State."

It will be seen from the permit that the Loan Company established itself in the State of Texas for a period of ten years for the purpose of lending money to the citizens of this State and availed itself of the law of the State to secure that right. It therefore became domiciled in the State the same as an individual would, who came here for the purpose of doing a like business and yet retained his citizenship in the State from which he came. The borrower lived in Texas; all of the property that he owned so far as we know was situated in this State, at least there is nothing to indicate that he owned any property in the Territory of Dakota. To secure the payment of the debt a deed of trust was taken upon property situated in this State. Upon these facts the question is to be determined, whether or not the contract, under the evidence and surrounding circumstances, was really intended to be performed in the Territory of Dakota or in the State of Texas.

The general rule of law contended for by the Loan Company, that a contract which is to be performed in a State other than that in which it is made may reserve interest according to the laws of either State, is too well settled to require discussion or the citation of authority; but the law looks to the substance of the contract and will not tolerate any contrivance by which it is intended to evade the laws of a State in which the contract is made or sought to be enforced.

The fact that the contract expresses that the money borrowed is to be paid in the Territory of Dakota is met by the real substantial provisions for its enforcement and the circumstances under which the business was transacted, with such overwhelming force that we are brought to the conclusion that the contract, in so far as it provided by its terms for the payment of the money in the Territory of Dakota, was simply a device to evade the laws of this State, and that these facts are so manifest from the face of the papers themselves that it ceases to be a question of fact, but becomes a matter of law to be determined from the undisputed evidence that is thus furnished.

The contract having been made with a view to its enforcement in the State of Texas and not in the Territory of Dakota, the agreement expressed in it that it should be paid in the Territory of Dakota was intended to enable the Loan Company by authority of the laws of this

State to do business in Texas and set our laws at defiance with impunity, and it can not be enforced by the courts of this State. (Tyler on Usury, p. 83; Miller v. Tiffany, 1 Wall., 298; Falls v. U. S. S. L. & B. Co., 97 Ala., 417; Meroney v. Atlanta B. & L. Assn., 47 Am. St. Rep., 841, 116 N. C., 882; Martin v. Johnson, 84 Ga., 481; Fowler v. Bell, 37 S. W. Rep., 1058, 90 Texas, 150.)

Tyler on Usury, page 83, states the legal proposition that if there be an intent to evade the law of the State in which the contract is made by making it payable at a different place, the construction and validity of the instrument will be controlled by the laws of the place where it is made, and continues as follows: "And perhaps it might be added that when a contract is made payable at a place other than the residence of either of the parties and foreign to the subject-matter of the contract, and a higher rate of interest is stipulated for than the laws of a place of contract permit, the parties will be presumed to have intended a fraudulent evasion of those laws." We think that this statement by the author is well sustained by the cases cited above, and that from the facts and circumstances of this case the intent to evade the laws of Texas is manifest.

The Supreme Court of the State of North Carolina, in Meroney v. A. B. & L. Assn., cited above, discussed the same question with such ability and force that we copy from that opinion at length. After stating the contention of the Loan Company that, because it was stipulated in the contract "that it is solvable in the foreign State and is made with reference to its laws, and those laws allow the taking by it of that rate of interest for the loan of money, the courts of this State are bound to enforce such a contract by decree of foreclosure," that court continues: "The proposition challenges careful attention. It is important that foreign capital invested within our borders shall have, to the very utmost, its just dues, and that it shall find our courts ready now, as they have always been, to protect its interest and enforce all its lawful rights. But it is important also that the settled policy of the State should be upheld by its courts, and that schemes which to them seem manifestly adopted merely to evade its usury laws should not be allowed to bring about a virtual abrogation of those statutes. If a foreign bank or other lender of money may establish local branches or offices in this State, and through its agents solicit and take applications for loans on mortgages of land here to be sent to the home office to be passed upon and allowed there, and if, because of such arrangement, and the insertion of a statement put in the note or mortgage that the contract is 'solvable' in the foreign jurisdiction and is made 'with reference to its laws,' the courts of this State are required to enforce such contracts, and decree a foreclosure of the mortgage and a sale of the land, that the foreign usurer may have his usury, then surely will it have come to pass that it is no longer true that there is no 'cover or device' by which the wholesome restraints put upon the money-lenders by our statutes may be escaped." * * * * * * "Now, it seems

very manifest to us, considering all the facts and circumstances, that this Georgia corporation required the plaintiff, a citizen and resident of this State, to declare, in the obligation given by him to it for the money loaned him, that the contract was solvable in that State and was made with reference to its laws, not because it was contemplated by either of the parties that the money would be paid there, or that the parties would enforce their respective rights under the contract in the courts of that State, but because this money-lender desired to escape the restraints of the laws of this State, and, by this formal declaration inserted in the contract, compel the courts of this State, in a suit for the foreclosure of the mortgage, to adjust the rights of the parties according to the laws of Georgia and the decisions of its courts, and in disregard of the laws of this State and the decisions of this court."

In support of the position taken by counsel for the Loan Company, we are cited to the two following cases: National B. & L. Assn. v. Ashworth, 22 S. E. Rep., 521, and Building & L. Assn. of Dakota v. Logan, 66 Fed. Rep., 827. The former case, decided by the Supreme Court of Virginia, fairly sustains the contention of counsel for the Loan Company, but rests upon the ground that the contract was to be performed in the State of New York.

Building & Loan Assn. of Dakota v. Logan, cited above, was decided by the Circuit Court of Appeals of the United States for this District, and upon a contract the same as that now under consideration. But the court does not notice the facts which go to show that the loan was not intended in reality to be paid nor the contract in any manner enforced or performed in the Territory of Dakota. The reasoning by which the conclusion in that case is reached is not such as to shake our confidence in the different conclusion at which we have arrived.

The rule of law, that the courts of a State will enforce a contract which is valid by the law where it was made or at the place where it was to be performed, although it may be invalid by the law of the forum, rests upon the comity which exists between the States of this Union. (Bank v. Earle, 13 Peters, 519.) But this doctrine of comity between the States and between independent governments does not require that any State or government shall enforce the laws of another State or the rights claimed by citizens of other States, or contracts to be performed in other States, which are so contrary to the laws of the State in which they are sought to be enforced as to work an injury and injustice to the people of the latter State or government or a serious interference with its own policy or laws.

This, however, is not a case in which the doctrine of comity can be invoked; the contract in question was not in fact made with the intention that it should be enforced or performed in the State of Dakota, and there is in truth no conflict between the laws of the two States to call upon the courts of this State for the exercise of comity towards our sister State.

If this court were to sustain the contention that this contract is not

to be governed by the laws of Texas, the practical effect would be to annul our statutes against usury and to turn the citizens of our State over to the unrestrained exactions of all lenders who might choose to avail themselves of such a sham. With as much propriety as in this case, all lenders and others who take contracts for the payment of money in the future could express in them that payment is to be made at some place in a country where no usury laws exist, reserving any rate of interest, by which device all of the business of the State could be done upon the same plan as in this case, in defiance of our law.

The contract in question is subject to the laws of the State of Texas and is usurious according to that law, and therefore void for the interest paid thereon. The District Court erred in refusing to allow to the Loan Company ten per cent attorneys' fees on the balance of the debt due it from Griffin and wife and in crediting Griffin and wife with the membership fees paid to the Loan Company. The Court of Civil Appeals rightly reversed the judgment of the District Court, but for the wrong reason. The Court of Civil Appeals erred in refusing to allow Griffin and wife credit for payments made on the stock and also erred in refusing to allow to the Loan Company ten per cent attorneys' fees on the balance of the debt due.

It is therefore ordered that the judgment of the District Court and of the Court of Civil Appeals be reversed and that judgment be entered in this court in favor of the Building & Loan Association of Dakota against Richard Griffin for the sum of $671, balance due upon the principal of the debt, and for the sum of $67.10 attorneys' fees, making the sum of $738.10, with six per cent interest per annum thereon from this date. It is further ordered that the lien of the deed of trust given by Richard Griffin and Lillie Griffin to the said Building & Loan Association be foreclosed upon the lots therein described, to secure the payment of the aforesaid sum, and that the said Building & Loan Association have and recover of Richard Griffin and Lillie Griffin all costs of the District Court and of the Court of Civil Appeals, and that each party pay one-half of the costs of this court.

*Reversed and rendered.*