CONTINENTAL OIL COMPANY and
Trans-Chem Facilities, Inc., Plaintiffs,

v.

GENERAL AMERICAN TRANSPOR-
TATION CORPORATION,
Defendant.

Civ. A. No. 73–H–1479.

United States District Court,
S. D. Texas,
Houston Division.

Feb. 11, 1976.

John D. Gilpin, Fulbright & Jaworski, Houston, Tex., for plaintiffs.

G. Irvin Terrell, Baker & Botts, Houston, Tex., for defendant.

## MEMORANDUM AND OPINION

CARL O. BUE, Jr., District Judge.

## I. INTRODUCTION

In this diversity action, plaintiffs seek to recover damages resulting from certain alleged defects in 46 railroad tank cars manufactured and sold by defendant to plaintiffs in 1966. Plaintiffs assert causes of action premised on negligence, strict liability in tort, breach of express and implied warranties, and breach of contract. Defendant has moved for partial summary judgment arguing that the warranty and breach of contract theories are barred by the applicable statute of limitations, § 2.725 of the Uniform Commercial Code, and that the strict tort liability theory is unavailable for recovery of "loss of bargain" in the absence of personal injury or casualty loss. Defendant does not challenge plaintiffs' cause of action grounded in negligence.

The Court has concluded that the actions for breach of implied warranties of merchantability and fitness are barred by the statute of limitations governing commercial transactions. However, summary treatment of the express warranty theory of recovery is not warranted at this time because material fact issues remain outstanding as to whether or not defendant made a warranty explicitly extending to future performance. Whether the breach of contract action is barred by the statute of limitations will be deferred pending further factual and legal development.

Defendant's challenge to plaintiffs' strict liability count raises an interesting choice-of-law question. As hereinafter discussed, the Court is of the opinion that the law of the state of manufacture, Ohio, applies, and that Ohio permits the maintenance of a strict liability action to recover for economic loss. Therefore, defendant's motion for partial summary judgment is granted in part, and denied in part.

## II. SECTION 2.725 AS A STATUTORY BAR TO RECOVERY

It is undisputed that plaintiffs purchased 31 new tank cars in December, 1965 and January, 1966, and 15 used tank cars in August and September, 1966. It is further uncontested that all of the railroad cars were manufactured in Ohio, delivered in Pennsylvania, Ohio, or Texas, and that the contracts of sale for their purchase were entered into in Oklahoma. In November of 1971, plaintiffs received an "Early Warning Letter" from the Association of American Railroads indicating that the 46 tank cars purchased from defendant evidenced various defects. On December 10, 1971, the Association placed an embargo on these cars prohibiting their use. Plaintiffs thereupon expended certain dollar amounts to repair the cars, for which recovery is sought from defendant. The cause of action was filed by plaintiffs on October 26, 1973, some seven years following the second purchase.

### A. Conflict of Laws Resolution

In a cause of action based on the parties' diversity of citizenship, it is necessary to apply Texas choice-of-law rules to determine which state's statute of limitations should apply to the warranties and breach of contract theories asserted by plaintiff. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The controlling Texas statute provides that when a cause of action based on breach of contract and warranty is filed within this State, the law of Texas should govern the substantive rights and duties of the parties if the disputed transaction bears an "appropriate relation to this state." Tex.Bus. & Comm.Code Ann. § 1.105(a). Comment 2 emphasizes that

the mere fact a suit is filed in the forum state does not make that state's law necessarily appropriate.

The parties agree that the Court need not decide the choice-of-law question because there really is no "conflict" of laws insofar as the statute of limitations is concerned. *See City Machine & Manufacturing Co. v. A & A Machinery Corp.* [4 U.C.C.Rep.S. 461] (E.D.N.Y.1967); *Stephan v. Sears, Roebuck & Co.,* 110 N.H. 248, 266 A.2d 855, 858 (1970). The parties indicate that all four states which have any significant contact with the two sales transactions, Texas, Ohio, Oklahoma and Pennsylvania, have adopted substantively identical statutes patterned on § 2–725 of the Uniform Commercial Code. However, although the statutes of limitations are comparable in the four states, the briefs submitted reveal that other aspects of the law of warranty, especially in the express warranty area, differ throughout the states. Therefore, because this Court must at some point decide which state's law should be applied to the merits of plaintiffs' contract-related claims, the appropriate law should be determined at this pre-trial stage.

■■■■ The Court is of the opinion that the law of Oklahoma should control. As mentioned above, Texas is one of three states where a partial delivery under the contract was made. The only other link between the forum state and the transactions is that a portion of the repairs to the tank cars in 1972 occurred in Texas. At the time of performance under the contract, neither party had its principal place of business in this state. While there is no discovered Texas case law interpreting the "appropriate relation"

test, this Court concludes that on the basis of the established facts and the case law of other jurisdictions, a Texas court would hold that the nexus between the disputed chain of events and the State of Texas is too slight to justify the use of Texas law. *See, e. g., Aldon Industries, Inc. v. Don Myers & Associates, Inc.,* 517 F.2d 188 (5th Cir. 1975); *Whitaker v. Harvell-Kilgore Corp.,* 418 F.2d 1010, 1016 (5th Cir. 1969); *Lloyd v. Classic Motor Coaches, Inc.,* 388 F.Supp. 785 (N.D.Ohio 1975).

Both parties agree that the two contracts for sale were executed in Oklahoma. The contracts indicate that performance is deemed to have occurred upon "the date of the arrival of each [car] in the delivering railroad yards." The cars were subsequently delivered in Texas, Pennsylvania and Ohio. In Texas, the law of the place where the contract was made governs when the agreement is performed in more than one place. *Hatchett v. Williams,* 437 S.W.2d 334 (Tex.Civ.App.—Houston [1st Dist.] 1968), *cert. denied,* 396 U.S. 963, 90 S.Ct. 437, 24 L.Ed.2d 427 (1969). Since the contract was performed in multiple states, Texas would apply the law of Oklahoma to plaintiffs' sales-related allegations.[1] Because implied warranty and strict liability theories greatly overlap in products liability cases, this Court would hesitate to apply Oklahoma law to plaintiffs' implied warranty claims and Ohio law to the strict liability count (as discussed in Part III.A., *infra*). However, because the Court has decided that the implied warranty allegations are barred by the statute of limitations, there will be no "conflict of laws" if Oklahoma law only governs the express warranty and

1. In two cases, the Texas Supreme Court has appeared to rely upon a functional or governmental-interests approach in resolving a choice-of-law question in the contracts area. *See Continental Oil Co. v. Lane Wood & Co.,* 443 S.W.2d 698 (Tex.1969); *Castilleja v. Camero,* 414 S.W.2d 424 (Tex.1967). However, as one commentator has pointed out, while the two cases speak in terms of the relevant states' interests in the controversy, no subsequent cases have employed a similar approach. *See* Baade, *Conflict of Laws, 1974 Annual Survey of Texas Law,* 28 S.W.L.J. 166, 224 (1974). Therefore, because the Court of Appeals for the Fifth Circuit has recently interpreted Texas law as following traditional choice-of-law rules, *see Ramirez v. Autobuses Blancos Flecha Roja, S.A. De C.V.,* 486 F.2d 493, 496 (5th Cir. 1973), this Court will not engage in a functional analysis of the conflicts question to determine which state's law of contracts and sales should control.

breach of contract theories, and Ohio law is applied to distinct theories of negligence and strict liability.

### B. Application of Oklahoma Law to Plaintiffs' Contract Theories

■■■ The Oklahoma statute of limitations provides in pertinent part:

"(1) An action for breach of contract for sale must be commenced within five years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.

"(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." 12A Okl.Stat.Ann. § 2–725 (1963).

Subdivision (2) unequivocally states that unless a warranty explicitly extends to future performance, any cause of action for breach of warranty commences to run at the time of delivery. Therefore, plaintiffs' allegations that defendant breached implied warranties of merchantability and fitness are barred by § 2–725 because of the seven-year gap between delivery of the cars in 1965 and 1966 and the filing of suit on October 26, 1973. *See Binkley Co. v. Teledyne Mid-America Corp.*, 333 F.Supp. 1183 (E.D. Mo.1971), *aff'd*, 460 F.2d 276 (8th Cir. 1972); *see, e. g., Val Decker Packing Co. v. Corn Products Sales Co.*, 411 F.2d 850, 851–52 (6th Cir. 1969).

The Oklahoma statute also states that an action for breach of contract must be commenced within five years from the date that the breach occurs. However, the parties have not provided the Court with Oklahoma law that defines the date on which such a breach should be deemed to have taken place. Therefore, the Court will defer consideration of whether the contract action is barred until the necessary facts have been developed in accordance with the relevant Oklahoma law.

Plaintiffs' major contention is that defendant made an express warranty explicitly extending to future performance of the cars and that the cause of action therefore accrued when the alleged defects were or should have been discovered. Plaintiffs argue that whether or not such a warranty was made is an outstanding fact issue which must be resolved by the finder of fact at trial. Defendant replies that the depositions of the employees who negotiated the two sales conclusively establish as a matter of law that no express warranty of future performance was made. While defendant has made a strong showing in this regard, it has not established to this Court's satisfaction that summary treatment is appropriate. Based on the correspondence between the parties prior to the purchases, there is some question as to whether an express warranty covering future performance was made. Therefore, because there is a genuine issue of material fact, defendant's motion for summary judgment is denied with regard to plaintiffs' allegation that defendant breached an express warranty explicitly extending to future performance.

### III. VIABILITY OF A STRICT LIABILITY THEORY TO RECOVER FOR LOSS OF BARGAIN

#### A. Conflict of Laws Resolution

■■ As mentioned earlier, a federal court sitting in a diversity case must follow the choice-of-law rules prevailing in the forum state.[2] *Klaxon Co. v. Stentor*

---

2. Although the law of contracts in Ohio, Texas, Oklahoma and Pennsylvania is very similar because of the adoption of the Uniform Commercial Code, tort principles are divergent. The states differ on the question of whether

one can recover from a manufacturer on a strict liability theory for economic loss, or whether a plaintiff is relegated to warranty and related contract theories. Ohio and Pennsylvania clearly allow a plaintiff to maintain

*Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Erie R. R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). This Court must rigidly apply the Texas law of conflicts, and cannot adopt a so-called "federal choice of laws" in the tort area that would alter the analytical approach or result dictated by the conflicts of law principles of the forum state. *Day and Zimmermann, Inc. v. Challoner,* 423 U.S. 3, 96 S.Ct. 167, 46 L.Ed.2d 3 (1975) (per curiam), *vacating the decision of the Court of Appeals at 512 F.2d 77 (5th Cir. 1975), and remanding for further proceedings.* As the Supreme Court stressed:

> "A federal court in a diversity case is not free to engraft onto . . . state [conflicts of law] rules exceptions or modifications which may commend themselves to the federal court, but which have not commended themselves to the State in which the federal court sits."

423 U.S. at 4, 96 S.Ct. at 168, 46 L.Ed. 2d at 5.

In order to determine which Texas choice-of-law rule should be utilized to decide the viability of the strict liability action, the Court initially must characterize this cause of action as one in contract or tort. *See Cook & Sons Equipment, Inc. v. Killen,* 277 F.2d 607 (9th Cir. 1960); 16 Am.Jur.2d Conflict of Laws § 3 (1964). *See also* R. Weintraub, Conflict of Laws 40–41 (1971). A federal court in a diversity case must classify the action in accordance with the law of the forum. *Ramirez v. Autobuses Blancos Flecha Roja, S.A. De C.V.,* 486 F.2d 493, 496 (5th Cir. 1973). As already indicated, plaintiffs assert in their multicount complaint theories of liability based on breach of contract, breach of warranty, negligence and strict liability. Plaintiffs thus raise alternative grounds for recovery in both contract and tort.[3]

an action based on strict liability. *Iacono v. Anderson Concrete Corp.,* 42 Ohio St.2d 88, 326 N.E.2d 267 (1975); *Kassab v. Central Soya,* 432 Pa. 217, 246 A.2d 848, 855 n. 7 (1968). Although the Texas Supreme Court has not ruled on the question, it is likely that a Texas court would deny a strict liability recovery for commercial loss. *See Pioneer Hi-Bred Int'l, Inc. v. Talley,* 493 S.W.2d 602, 606–08 (Tex.Civ.App.—Amarillo 1973, *no writ*); *Eli Lilly & Co. v. Casey,* 472 S.W.2d 598 (Tex.Civ. App.—Eastland 1971, *writ dism'd*); *Thermal Supply of Texas, Inc. v. Asel,* 468 S.W.2d 927 (Tex.Civ.App.—Austin 1971, *no writ*); *Melody Home Mfg. Co. v. Morrison,* 455 S.W.2d 825 (Tex.Civ.App.—Houston [1st Dist.] 1970, *no writ*). The issue has not been clearly resolved in Oklahoma. *See Sterner Aero AB v. Page Airmotive, Inc.,* 499 F.2d 709 (10th Cir. 1974). *But see Moss v. Polyco, Inc.,* 522 P.2d 622 (Okl.1974). Because of this variance, the substantive result to be reached by this Court is heavily dependent on how the choice-of-law question is resolved.

**3.** As discussed in footnote 2, *supra,* four intermediate appellate courts of the forum state have refused to recognize a strict liability recovery for purely commercial losses such as lost profits, costs of repair, and expenses incurred in obtaining substitute goods during the repair period. In an effort to keep the remedies under the Uniform Commercial Code distinct and separate from the strict liability theory of the Restatement (Second) of Torts

§ 402A, the Texas courts have viewed such an action as one governed by the law of sales, *i. e.* as a contract action. However, as the Houston Court of Civil Appeals notes, divergent views are held as to whether an economic loss gives rise to a right to recover in strict liability and "the matter has not been settled in this state." *Melody Home Mfg. Co. v. Morrison,* footnote 2 *supra* at 828. Although subsequent Texas courts have followed the lead of the Houston Court of Civil Appeals in denying a strict liability recovery for economic loss, it should be emphasized that the Supreme Court of Texas has not been presented with the question.

If the strict liability theory of recovery were the only non-U.C.C. theory urged by plaintiffs, this Court would be inclined to characterize plaintiffs' action as one governed solely by the law of sales and apply the forum's contract choice-of-law rules to all theories of recovery. But, there is an additional negligence count in the complaint which has gone unchallenged by defendant. While Texas courts have sought to counter the overlap in the implied warranty and strict liability doctrines by carefully matching the theory of recovery with the type of loss sustained, no similar concern has been displayed when a negligence action is joined with breach of warranty allegations. In this situation, a recovery in negligence for economic loss has been allowed. *See, e. g., Orkin Exterminating Co. v. Gulf Coast Rice Mills,* 362 S.W.2d 159 (Tex.Civ.App.—Houston 1962,

Because Texas courts construe an action in strict liability as a tort action, *see Doss v. Apache Powder Co.*, 430 F.2d 1317 (5th Cir. 1970), this Court will apply tort choice-of-law principles.

 Texas courts apply the traditional rule of lex loci delicti in the tort area. *Click v. Thuron Industries, Inc.*, 475 S.W.2d 715, 716 (Tex.1972); *Marmon v. Mustang Aviation, Inc.*, 430 S.W.2d 182 (Tex.1968); *Pratt v. Royder*, 517 S.W.2d 922, 924 (Tex.Civ.App.—Waco 1974, *writ ref'd n. r. e.*). Under Texas law, the law of the place of the wrong, the lex loci delicti, governs the substantive rights of the parties. Typically, the "place of the wrong" is construed to mean the state or nation within which the injury or damage was sustained. *El Paso & N. W. Ry. v. McComas*, 36 Tex. Civ.App. 170, 81 S.W. 760 (1904, *writ ref'd*); *see Hearne v. Dow-Badische Chemical Co.*, 224 F.Supp. 90, 96 (S.D. Tex.1963).

The instant case, however, presents a unique fact situation which prevents easy application of the mechanical "place of damage" rule. The following undisputed facts will again be reiterated. The 46 railroad tank cars in issue were designed and manufactured by defendant at its Ohio facility pursuant to contracts of sale entered into in Oklahoma. The 31 new cars were delivered to plaintiffs in Pennsylvania, 12 of the 15 used cars were delivered in Texas, and the remaining 3 used cars were delivered in Ohio. It is alleged that cracks subsequently developed in the cars prompting the Association of American Railroads, in 1971, to order their removal from service until repaired.

It is agreed by the parties that there is no evidence that would reveal where the cracks in the tank cars occurred. The alleged defects developed slowly over a period of several years while the cars were being used throughout the eastern United States. This central fact thus prevents the Court from pinpointing a particular locale where the damage occurred.

 The Texas definition of the "place of the wrong" as that location where the injury or damage was sustained thus presumes the existence of a fact which cannot be discovered in the instant case. In the absence of such evidence, the Court is left in an uncertain position as to which state's law a Texas court would choose to apply. Nevertheless, the Court must endeavor to select the rule and the result which a state court in the forum state would most likely adopt. *First Nat'l Life Ins. Co. v. Fid. & Dep. Co.*, 525 F.2d 966, 968 (5th Cir. 1976); *Whitaker v. Harvell-Kilgore Corp.*, 418 F.2d 1010, 1017 (5th Cir. 1969); *Putman v. Erie City Manufacturing Co.*, 338 F.2d 911 (5th Cir. 1964).

The parties have urged the following alternative approaches for resolving the conflicts question:[4] (1) that the Court follow a choice-of-law rule that incorporates, within the definition of the lex loci delicti, the place where the wrongful act or omission occurred; (2) that the Court employ a "most significant contacts" analysis; or (3) that the Court simply apply the substantive tort law of

---

*writ ref'd n. r. e.*). *But see Pioneer Hi-Bred Int'l, Inc. v. Talley*, footnote 2, *supra*. Based on the fact that, regardless of the substantive law selected, tort principles will be applied under the negligence concept, the Court is of the opinion that a Texas court would define the instant action as one sounding in both tort and contract.

4. Defendant, in its first brief in support of its motion for Partial Summary Judgment, took the position that the substantive law of Ohio precludes a plaintiff from recovering under a strict liability theory for commercial loss. Be-

cause the defendant viewed Ohio law as being in its favor, it strenuously urged the Court to resolve the conflicts question by applying the tort law of Ohio. However, subsequent thereto, plaintiffs have proffered a recent 1975 opinion of the Ohio Supreme Court, *Iacono v. Anderson Concrete Corp.*, footnote 2, *supra*, which clearly allows a plaintiff to maintain an action in strict liability to recover for economic loss. As a result, much of the exhaustive analysis undertaken by defendant to illustrate that Ohio law should apply now works in plaintiffs' favor.

the forum state, Texas, which reflects the better-reasoned majority view.

■■■ 1. A few Texas courts, in applying the traditional rule of lex loci delicti, have defined the principle to include "the law of · the state where the wrongful act or neglect took place" which, in this case, would be the law of the place of manufacture, Ohio. *Lee v. Howard*, 483 S.W.2d 922, 923 (Tex.Civ. App.—Eastland 1972, *writ ref'd n. r. e.*); *Brown v. Seltzer*, 424 S.W.2d 671, 674 (Tex.Civ.App.—Houston [1st Dist.] 1968, *writ ref'd n. r. e.*); *Marmon v. Mustang Aviation, Inc.*, 416 S.W.2d 58, 63 (Tex. Civ.App.—Austin 1967), *aff'd*, 430 S.W.2d 182 (Tex.1968); *Withers v. Stimmel*, 363 S.W.2d 144, 148 (Tex.Civ.App.— Dallas 1962, *writ ref'd n. r. e.*); *see* 12 Tex.Jur.2d *Conflict of Laws* § 13, at 312 (1960). However, as defendant points out, in the Texas opinions that recite this broad rule, the negligent conduct and resulting injuries occurred in the same state. No Texas court has gone so far as to select the law of the place of the negligent act over the law of the state where the injury was sustained. While this Court has not located any choice-of-law decision wherein a Texas court was unable to pinpoint the place of injury, the Court is of the opinion that a Texas court, confronted with the instant fact situation, would characterize the situs of the wrongful acts, Ohio, as the lex loci delicti in the absence of definite places of injury or damage to the various cars. Although the courts of Texas have opted for the place of injury over the place of conduct when both can be traced, *see El Paso & N. W. Ry. Co. v. McComas, supra,* there is no discovered decision that has rejected the law of the state where the alleged wrongful act occurred when a definite point of damage cannot be ascertained. Finally, other courts faced with comparable allegations of faulty design, manufacture and inspection have applied the substantive law of the state of manufacture. *See Vrooman v. Beech Aircraft Corp.*, 183 F.2d 479 (10th Cir. 1950); *cf. Bender v. Hearst Corp.*, 263 F.2d 360 (2d Cir. 1959). *See generally*

Annot., 76 A.L.R.2d 130, 147 (1961). Accordingly, in the absence of Texas case authority on the question, and given judicial language that includes the "place where the wrongful conduct occurred" within the definition of the lex loci delicti, the Court concludes that a Texas court, applying traditional choice-of-law rules, would apply the substantive tort law of Ohio. *See* Baade, *Conflict of Laws, 1974 Annual Survey of Texas Law,* 28 S.W.L.J. 166, 212–15 (1974).

2. Given the instant difficulty in using the traditional lex loci delicti rule, as heretofore generally interpreted by Texas courts, such a court might employ the "most significant contacts" approach. Texas courts have rejected this recently-developed analytical method, but the refusal has been announced under special circumstances easily distinguishable from the ordinary tort action. All Texas decisions that have rejected the "functional analysis" approach have involved application of the Texas Wrongful Death Statute, Tex.Rev.Civ.Stat.Ann. arts. 4671 *et seq. See Click v. Thuron Industries, Inc., supra; Marmon v. Mustang Aviation, Inc., supra.* Article 4678 of the statute allows a beneficiary to maintain a cause of action in a Texas court for the death of a relation occurring in a foreign state if such foreign state provides such a remedy. As a matter of statutory interpretation, the courts of Texas have long held that article 4678 requires the substantive law of the place of injury to be applied. *Jones v. Louisiana Western Ry. Co.*, 243 S.W. 976 (Tex. Com.App., 1922). When faced with the argument that Texas substantive law should be applied because of its superior relation to the parties, Texas courts have opted to follow a long-standing interpretation of a legislatively-imposed choice-of-law rule, embodied in Article 4678. The courts have stressed, however, that they are bound by the legislative pronouncement and that, in the absence of a statutory rule, they might very well apply a "most significant contacts" test over the traditional "place of the wrong" doctrine. *Marmon v. Mustang Aviation, Inc., supra,* at 187, *aff'g,* 416 S.W.2d 58,

at 63. *See Lipschutz v. Gordon Jewelry Corp.,* 373 F.Supp. 375, 385 (S.D.Tex. 1974); *see also* Thomas, *Conflict of Laws, 1975 Annual Survey of Texas Law,* 29 S.W.L.J. 256–59 (1975). As emphasized by Justice Norvell on a motion for rehearing in the *Marmon* case:

> "This is not the . . . kind of a case . . . wherein a true choice of law issue was presented and the stare decisis problem involved common law precedents. The doctrine of lex loci delicti is a court-made rule, . . and the abandonment of this rule in favor of some different one, such as a "significant contacts" rule, while it may involve the overruling of common law precedents on policy grounds, does not necessarily involve saying that a statute [art. 4678] had one meaning fifty years ago and a different one today. In this latter situation, restraint rather than temerity may be the more becoming judicial virtue." 430 S.W.2d at 194.

Given such language, there is a substantial likelihood that a Texas court might apply a "significant contacts" rule when urged in a non-statutory context, especially where, as in this case, the principle of lex loci delicti ceases to function mechanically.

■ If Texas were to utilize this choice-of-law test, there is no doubt but that the law of Ohio would be selected. Ohio, as the home of defendant's manufacturing facilities, is closely linked to any cause of action which challenges the quality of defendant's performance in designing and manufacturing goods. Ohio has a significant interest in determining the liability of in-state manufacturers and, accordingly, controlling defendant's conduct. Weintraub, *supra,* at 220. Texas and Pennsylvania, being states where partial deliveries under the contracts occurred, and Oklahoma, the state in which the contract was entered, have interests inferior to that of Ohio. *See* Weintraub, *supra,* at 219–24; Weintraub, *Choice of Law for Products Liability,* 44 Tex.L.Rev. 1429, 1442–46 (1966). In the absence of some expres-

sion from Texas courts as to what weight should be accorded the policies of the respective states, and being cognizant of the mandate of the Supreme Court in *Day and Zimmerman, Inc. v. Challoner, supra,* that federal courts not create federal choice of law in a diversity case, this Court will exercise restraint and not engage in a more detailed application of the "significant contacts" doctrine to these facts. Suffice it to say that no matter what factors a Texas court might focus upon, which is mere speculation at this point, it is most likely that Ohio would be deemed to have the greatest contact with the instant transaction, and the most substantial interest in the outcome of the litigation.

■ 3. Defendant urges that this Court, in the absence of a clear conflicts principle, apply a substantive rule that represents the "better-reasoned majority rule." No Texas court, however, has used such an approach in resolving a choice-of-law question, and this Court would be violating the rule announced in *Day and Zimmerman, Inc. v. Challoner, supra,* if it were to adopt this proposal. Additionally, the Court concludes that a Texas court would not refuse to apply Ohio law on the grounds that such law is against the public policy of the State of Texas. *See, e. g., Building & Loan Ass'n v. Griffin,* 90 Tex. 480, 39 S.W. 656 (1897); 12 Tex.Jur.2d *Conflict of Laws* § 3, at 304 (1960).

Therefore, it is the conclusion of this Court that the substantive tort law of the State of Ohio should govern the negligence and strict liability theories urged by plaintiff.

*B. Ohio Law on the Maintenance of a Strict Liability Action for Recovery of Purely Economic Loss*

■ The Ohio Supreme Court has very recently ruled that under Ohio law a plaintiff may maintain an action in tort, whether it be on a negligence or strict liability theory, to recover for a pecuniary loss of bargain, *citing Santor v. A & M Karagheusian, Inc.,* 44 N.J. 52, 60, 207 A.2d 305, 309 (1964); *Iacono v.*

*Anderson Concrete Corp.,* 42 Ohio St.2d 88, 326 N.E.2d 267 (1975). Defendant apparently does not dispute the fact that, if Ohio law is applicable, this recent decision permits plaintiffs to maintain an action in strict liability to recover for economic loss sustained due to the alleged failure of defendant to properly design, manufacture and inspect the tank cars. Therefore, given the clear ruling by the Ohio Supreme Court, and being of the opinion that Ohio law is the appropriate law to apply in this case, defendant's motion for summary judgment on the strict liability count should be and hereby is denied.

## IV. CONCLUSION

In summary, the Court would re-emphasize that in deciding to apply Oklahoma contract law and Ohio tort law to the instant cause of action, the Court has endeavored to determine what a Texas court would do under similar circumstances. The unique fact situation has compounded the problem. But, most importantly, it is the application of "mechanical" choice-of-law rules to this dual tort-contract action that has resulted in the dichotomy in the law to be applied. The Court has been pointed in two directions, although for purposes of ruling on the merits, it would prefer to be pointed in one. However, until such time as the Texas courts clearly adopt a functional test that encourages the rational selection of a single jurisdiction to govern the entire dispute, this Court must abide by the presently-existing maze of conflict rules which represent Texas law.

Defendant's motion for summary judgment is granted as to the implied warranty theories, but is denied as to the breach of express warranty, breach of contract and strict liability counts.