CASE 33—PETITION ORDINARY—MARCH 8.

# Locknane v. United States Savings & Loan Co.

### APPEAL FROM CLARK CIRCUIT COURT.

1. CONTRACTS—PLACE OF PERFORMANCE—EVASION OF USURY LAWS.— Where a resident of this State borrows money from a Building & Loan Association in another State, and executes a mortgage on lands in this State to secure the same, the contract is to be performed in this State, and will be held to be subject to the usury laws of this State, notwithstanding a recitation in the note which he executed therefor that it was made with reference to the laws of the other State; such recitation being manifestly made for the purpose of evading the usury laws of Kentucky.

2. CONTRACTS—PAYMENT BEFORE MATURITY—USURY.—When by agreement between a debtor and his creditor the debtor is permitted for a consideration to discharge his debt before it is due, the debtor is not precluded from recovering of the creditor all usury paid by him up to that time

EDWARD W. HINES FOR APPELLANT.

1. The case of U. S. Savings & Loan Co. v. Scott, 17 Ky. Law Rep., is conclusive of this case; the contract in that case, except as to dates and amounts, was exactly like the one in this case, both being made in the same company and in the same way.

RODNEY HAGGARD OF COUNSEL ON SAME SIDE.

BECKNER & JOUETT FOR APPELLEE.

1. While under the decision in the Scott case in 17 Ky. Law Rep., premium payments are to be treated as interest, and all such payments in excess of six per cent. as usury, in order to authorize the payor to recover the usury, he must have paid his regular installments until he has paid off the loan, as required by his contract, or until he has, upon the basis of six per cent. calculation, paid more than his loan with legal interest; or he must have made enough monthly payments to extinguish his debt and legal interest before he is entitled to a cancellation of his debt.

2. Where a debtor anticipates the maturity of his debt, and pays for the privilege of doing so, it is not a contract for the loan or forbearance of money, and therefore not usurious. Neafus v. Vandeveer, 3 Sand. Ch. (N. Y.), 268.

3. The lender is entitled to his principal and the interest for the entire time the loan is to run, and if as alleged, the payment before maturity is less than would be owing the creditor if the loan had been continued until fully paid, independent of any agreement at the time of repayment, the amount thus paid before the maturity of the debt is not usurious even though it be greater than the unpaid principal and six per cent. interest up to that time. Drew v. Towle, 10 Foster (N. H.), 531; Handley v. Dobson's Admr., 7 Ala., 361; Kechley v. Union Bank, 79 Va., 458.

JUDGE BURNAM DELIVERED THE OPINION OF THE COURT.

Appellant alleges that on the 13th day of October, 1891, he borrowed of appellee $6,000, but in order to procure the loan was compelled to pay $559 as a premium thereon in advance, and that he received only $5,433 of the amount borrowed; that subsequently, beginning on the second Monday in January, 1892, and ending on the second Tuesday in December, 1893, he paid to appellee $102 each month, paying in the aggregate $2,550; that on the 10th day of December, 1893, he paid to appellee, in discharge of his debt, the further sum of $5,220.80; that the money

so paid by him to appellee was largely in excess of the sum of $6,000, with interest at 6 per cent. per annum thereon from the 13th day of October, 1891, to the 10th day of December, 1893, and that this excess was made up of usury which had been illegally exacted from him and which he seeks to recover.

Appellee by way of answer alleges that it is a Minnesota corporation having its principal place of business at St. Paul, and that at the time of the loan appellant became a stockholder and member of defendant corporation, and that it issued to him certificates for one hundred and twenty shares of its capital stock of the par value of $100 each, which were delivered to and accepted by the plaintiff; that thereafter he made application to the company for the advancement of the par value of sixty shares of the capital stock of the company issued to him as aforesaid and in consideration of this advancement agreed to pay the company a premium of 50 per cent. on the one hundred and twenty shares of the capital stock of the company, and also agreed to assign the remaining sixty shares of the stock as security for the payment of the loan; that he further agreed to secure the payment of same, with interest, premium and fines, by mortgage upon a tract of land situate in Clark county, Kentucky; that on the 30th day of October, 1891, plaintiff executed this note:

"St. Paul, Minn., October 30, 1891. For value received after three years from date and before nine years from date we promise to pay to the order of the United States Saving, Loan & Building Co., at the office of its treas-

urer, St. Paul, or its trustees in Minneapolis, Minn., the
sum of $6,000, with interest at the rate of 6 per cent.
per annum on the sum of $6,000, payable monthly. · It is
understood that this note is given for a loan obtained
on one hundred shares of the stock of the said United
States Saving, Loan & Building Co., and if the maker
hereof fails to make any monthly payment on said stock
or to pay any instalment of interest for a period of three
months after the same is due, then the whole amount of
this note shall become due and payable; but if the maker
hereof shall pay all the instalments of interest which
become due hereon and all the monthly payments and
fines which become due on said stock, then on the sur-
render of said stock by said company this note shall be
deemed to be fully paid and cancelled. This note is un-
derstood to be made with reference to and under the
laws of the State of Minnesota."

That simultaneously with the execution of this note
plaintiff executed and delivered a mortgage and an as-
signment of the capital stock referred to; that the note,
mortgage and assignment were forwarded to the defend-
ant's office in Minnesota and the advancement of the
money made through the office of the company in that
State and sent to the plaintiff in Kentucky; that this
loan was made upon the building and loan association
plan in accordance with and under the laws of the State
of Minnesota and was authorized by and made legal and
binding upon the plaintiff under those laws, and that
plaintiff had expressly agreed that the contract was
made with reference to and under the laws of that State.

Locknane v. United States Savings & Loan Co.

In the third paragraph appellee alleges that it entered into an agreement with plaintiff, at his special instance and request and as an accommodation to him to enable him to secure a release of the lien upon his property, that if plaintiff would pay two months' extra interest and premium with all accrued fines and surrender his stock for cancellation at the withdrawal value of same, the defendant would accept the repayment of the loan in advance of its maturity and would cancel the mortgage on the real estate, and that pursuant to this agreement plaintiff paid the sum of $5,220.80, in consideration of which, and in accordance with its agreement, it surrendered its note, cancelled its stock and released the mortgage on his property, and plead an estoppel.

By the fourth paragraph it relies on the alleged fact that the aggregate of the sums paid by plaintiff is less than the amount of the loan with interest at 6 per cent. up to the maturity of the note and pleads same as a bar.

Plaintiff filed a general demurrer to this answer and each paragraph thereof, which was overruled; and plaintiff failing to plead further, the court adjudged that the petition be dismissed, and hence this appeal.

This court has uniformly held in cases of domestic building and loan associations that they could not collect a higher rate of interest than 6 per cent., and that charters conferring such powers were unconstitutional. (See Henderson Building & Loan Association v. Ziller, 11 Rep. 102, and Same v. Johnson, 88 Ky., 191.) And there can be no doubt that the contract in this case is usurious, if it is to be governed by the laws of this State.

The real question to be determined is, was the contract to be performed in Minnesota or in Kentucky? Appellee relies for the validity of the contract upon the agreement of appellant that the money was to be paid at the office of the treasurer of the company in Minnesota and that by express agreement of the parties their rights thereunder were to be determined by the laws of that State. And it is alleged, and upon demurrer must be taken as true, that under the laws of the State of Minnesota the contract made with appellant was a valid and binding one; and we must therefore look to the facts of this case in order that we may intelligently determine whether the contract was in reality intended to be performed in Minnesota or in Kentucky.

The borrower lived in this State; the agreement made to secure the loan was in this State, and to enable the defendant to enforce its contract it was necessary for it to come into either the Federal or State courts of this State. More than that, by section 873 of the Kentucky Statutes, before appellee was authorized to solicit or do business in Kentucky, it was required to obtain from the Secretary of State a license so to do, to become domiciled exactly as an individual would who had come for the purpose of doing a like business yet retaining his citizenship in the State from which he came. The contract was in reality made in this State and was to be performed here; and the practical effect of any other construction would be to destroy the efficacy of our statutes against usury, as all that money lenders who make contracts for the payment of money in the future would be re-

Locknane v. United States Savings & Loan Co.

quired to do, in order to evade these laws, would be to express in such contracts that the payment was to be made in some place in a State where no usury laws exist.

The Supreme Court of North Carolina, in the case of Maroney v. Assn., 116 N. C., 882, in discussing this identical question, said: "It is important that foreign capital invested within our borders shall have to the very utmost its just dues and that it shall find our courts ready to enforce all its lawful rights. But it is also important that the settled policy of the State should be upheld by its courts and that schemes that to them seem manifestly adopted merely to evade its usury laws shall not be allowed to bring about a virtual abrogation of its statutes. If a foreign company or other lender of money may establish local branches or offices in this State and through its agents solicit and take the applications for loans on mortgages of land here to be sent to the home office to be passed upon and allowed there, and if because of such an arrangement and the insertion of a statement put in the note or mortgage that the contract is solvable in the foreign jurisdiction and is made with reference to its laws, and the courts of this State are required to enforce such contracts and decree a foreclosure of the mortgage and a sale of the land that the foreign usurer may have his usury, then surely will it have come to pass that it is no longer true that there is no cover or device by which the wholesome restraints put upon the money lender by our statutes may escape. . . . . Now it seems very manifest to us, considering all the

facts and circumstances, that this Georgia corporation required the plaintiff, a citizen and resident of this State, to declare in the obligation given by him to it for the money loaned him, that the contract was solvable in that State and was made with reference to its laws, not be-cause it was contemplated by either of the parties that the money would be paid there or that the parties would enforce their respective rights under the contract in the courts of that State, but because this money lender de-sired to escape the restraints of the laws of this State, and by this formal declaration inserted in the contract compel the courts of this State, in a suit for the fore-closure of the mortgage, to adjust the rights of the par-ties according to the laws of Georgia and the decisions of its courts and in disregard of the laws of this State and the decisions of this court,"—holding the contract not to be enforcible.

In construing a contract almost identical with the one at bar, the Supreme Court of Texas, in the case of the Building & Loan Assn. of Dakota v. Griffin (39 S. W. Rep., 656), said: "The general rule of law contended for by the loan company, that a contract which is to be per-formed in a State other than that in which it is made may reserve interest according to the laws of either State, is too well settled to require discussion or citation of au-thority; but the law looks to the substance of the con-tract, and will not tolerate any contrivance by which it is intended to evade the laws of a State in which the contract is made or sought to be enforced. The fact that the contract expresses that the money borrowed is to be

paid in the Territory of Dakota is met by the real substantial provisions for its enforcement and the circumstances under which the business was transacted with such overwhelming force that we are brought to the conclusion, in so far as is provided by its terms, that the payment of the money in the Territory of Dakota was simply a device to evade the laws of this State; and these facts are so manifest from the facts of the papers themselves that it ceases to be a question of fact but becomes a matter of law to be determined from the undisputed evidence that is thus furnished.    The contract having been made with a view to its enforcement in the State of Texas, and not in the Territory of Dakota, the agreement expressed in it, that it should be paid in the Territory of Dakota, was intended to enable the loan company, by authority of the laws of this State, to do business in Texas but set our laws at defiance with impunity." The court held in that case that the contract in question was subject to the laws of the State of Texas, and being usurious according to those laws, was void, with interest paid thereon.

The same doctrine was held by this court in the case of the United State Saving & Loan Co. v. Scott, 17 Ky. Law Rep., 1244, and we therefore conclude that the contract in this case must be construed with reference to the laws of Kentucky and is usurious to the extent of the premium exacted in excess of the legal rate of interest.

The remaining question to be considered is whether the subsequent agreement entered into, by which appellant was allowed to anticipate the payment of the residue of

[18]

his debt before its maturity is a bar to his right to main-
tain this action to recover usury, the contention of ap-
pellee being that as appellant voluntarily paid on the 10th
day of December, 1893, $5,220.80 in discharge of his debt,
in consideration that appellee would release the mort-
gage on the land and relieve him from liability as a stock-
holder in the defendant company that the amount paid
in excess of the principal with interest at 6 per cent. was
not for the loan, or forbearance of the money, but was for
the release from the contract, and that he is therefore
estopped from maintaining this action.

In order to properly determine this question, we will
examine the terms of the original contract. The promise
was to pay "three years from date and before nine years
from date." Appellant therefore had the right to dis-
charge his debt three years from the date of its creation
and could have done so at any time by paying the prin-
cipal and three years' legal interest, which would have
amounted in the aggregate to a sum much less than he
was required to pay almost a year before the date of its
maturity. Not only does the note give the appellant the
right to pay his loan after three years, but the by-laws
also confer upon him the same right, it being provided
by section 7 of the article on loans, "that loans on real
estate may be paid at any time after three years from
the date of the mortgage, on such terms as the board
of directors may determine; but the mortgagee must in
all cases give thirty days' notice of his intention to pay
such loans." Besides, the appellant had the right to

withdraw at any time after one year from the time he became a member, by giving sixty days' notice in writing.

The consideration expressed in the writing for the consent of the appellee to receive the debt at the time payment was made, was that appellant should pay two months' extra premium and interest. When this was paid the debt was made to mature on the 10th day of December, 1893, instead of at the time fixed in the original contract; and appellant by this agreement acquired the right to anticipate the payment of his debt, and has the same right to recover usury paid as if he had originally agreed to repay the loan on December 10, 1893, and has not been precluded by this agreement from the recovery of all sums paid by him in excess of the debt with legal interest up to the date of payment and the reasonable dues necessary for the maintenance of the organization during the period whilst he was connected with it as a stockholder and the additional sum which he specially agreed to pay in consideration of being allowed to anticipate the payment of his debt before the maturity thereof.

For the reasons indicated the judgment is reversed and the cause remanded for proceedings consistent herewith.