TEXAS & NEW ORLEANS RAILROAD COMPANY ET AL. v. FELIX GROSS ET UX.

Decided May 4, 1910.

**1.—Pleading—Amendment—Same Demand.**

In a suit in this State by the father and mother against two railroad companies for fatal injuries negligently inflicted in Louisiana upon their son while in the discharge of his duties as locomotive fireman, the plaintiffs claimed in their original petition twofold damages: first, the pecuniary loss sustained by them from the son's death; second, the damages which the deceased himself suffered, the plaintiffs alleging that under the statutes of Texas and Louisiana the cause of action which the deceased himself had against the defendants for personal injuries, survived to them. In an amended petition the latter claim for damages was abandoned and the following allegation was made: "Plaintiffs aver that by the statute law of the State of Louisiana they are given a right of action against defendants and each of them for the damages sustained by them by the death of their said son caused by their negligence as aforesaid, which statute is similar to the statute of this State giving parents a right of action for the death of their son as a result of negligence." Held, the amended petition did not set up a new cause of action.

**2.—Transitory Actions—Comity Between States—Case Approved.**

There being no essential difference between the laws of Texas and of Louisiana concerning the right of parents to recover damages for the negligent killing of their son; and there being no difficulty in the courts of this State administering the remedy substantially as contemplated by the statute of Louisiana; and no matter of public policy intervening to deter the courts of this State from exercising such jurisdiction, the courts of Texas have and will exercise jurisdiction of causes of action growing out of fatal personal injuries inflicted in the State of Louisiana. Texas & N. O. R. R. Co. v. Miller, post, p. 627, approved.

**3.—Railroad—Exemption from Damages—General Law—Conflict.**

The Legislature of a State is powerless to grant to a particular railroad company immunity or exemption from liability for damages for personal injuries to its employes resulting in death, and such provision in a railroad

charter would be of no effect as against a subsequent general statute rendering all railroads liable for such damages. Texas & N. O. R. R. Co. v. Miller, post, p. 627, approved.

**4.—Railroads—Animals on Right of Way—Negligence—Pleading and Evidence.**

Pleading considered, and held sufficient to support a finding that a railroad company was negligent in failing to notify its passing trainmen of the presence of cattle upon the right of way at a certain point, or in failing to have the cattle removed, where one of its trainmen was injured by collision with the cattle.

**5.—Appeal—Objection to Evidence—Practice.**

Only such objections as were made in the trial court to the introduction of evidence will be considered on appeal.

**6.—Damages—Personal Injury in other State—Comity.**

The mere fact that the statute of Louisiana includes other elements of damage in cases of personal injuries than those specified in the Texas statute, is no reason why the courts of Texas should not apply and enforce the Louisiana statute.

Appeal from the District Court of Harris County. Tried below before Hon. Chas. E. Ashe.

*Baker, Botts, Parker & Garwood* and *A. L. Jackson*, for appellants.

*John Lovejoy* and *J. W. Parker*, for appellees.

JAMES, Chief Justice.—The amended original petition on which the case was tried alleged in substance that Corley Gross, for whose death damages are sought, left no widow or children; that plaintiffs (appellees) are his parents; that said Corley Gross was in the employ of defendants, the Texas & New Orleans R. R. Co. and the Louisiana Western R. R. Co., as locomotive fireman, the former operating a line from Houston, Texas, to Echo, Texas, and the latter a line from Echo to Lafayette, La.; that said companies operated their lines jointly, so that deceased was required to operate engines over both lines from Houston to Lafayette; was subject to be discharged by both companies, and said companies were practically partners in the conduct of said business; that the latter's road ran through a country where great numbers of cattle habitually grazed upon its right of way and track to the great menace of trains; that in the exercise of ordinary care it had fenced its right of way, and deceased and other employes looked to defendants to use ordinary care in keeping such fence in proper repair to avoid collisions with cattle; that on the occasion of the injury, while deceased was prosecuting his duties on a passenger train running from Houston to Lafayette and near the station of Sulphur, in Louisiana, at night, the locomotive came in contact with a cow and was derailed, the result of which was Gross's death. The petition alleged negligence on the part of defendants in several particulars which will not be stated here but may be hereafter, if found to be necessary.

The original petition in this case was filed March 31, 1906, and the amended petition on May 19, 1908. In both the accident was alleged to have occurred on or about June 1, 1905.

In the original petition the allegations of damage to plaintiffs were twofold: First, the pecuniary loss sustained by them from the son's death, and second, the damages which the deceased himself suffered, as surviving to plaintiffs, plaintiffs in the latter connection alleging in the original petition that, under the statutes of the States of Texas and Louisiana, the cause of action which the deceased had against defendants for the injuries sustained by him, survived to his father and mother.

In the amended petition the latter claim for damages was abandoned, and this allegation appears: "Plaintiffs aver that, by the statute law of the State of Louisiana, they are given a right of action against defendants and each of them for the damages sustained by them by the death of their said son caused by their negligence as aforesaid, which statute is similar to the statute of this State giving parents a right of action for the death of their son as a result of negligence."

At this point we may dispose of appellants' second assignment of error under which the contention is made that demurrers should have been sustained to the amended pleading upon this proposition: "An amendment of pleading which introduces a new or different cause of action, and makes a new and different demand not made before in the pending suit, does not relate back to the beginning of the action so as to stop the running of the statute of limitations, but is equivalent to a fresh suit upon a new cause of action, and the statute continues to run till the amendment is filed."

The demand for what is sued for in the amended petition appears also in the original petition, and therefore it is plain to our minds that the amended petition set up no new cause of action. Anything necessary to be alleged in order to perfect something that is insufficiently pleaded is the office of an amendment. The cause of action was asserted from the first. In the original petition it seems there was the allegation of a statute of Louisiana, but only in reference to the right to recover by survival the damages suffered by the deceased. This allegation could properly be amended so as to include in the statute both forms of damage; and if the original petition had entirely omitted mention of the existence of any such statute, the allegation could be supplied by amendment. Consequently, the first and fourteenth assignments are overruled.

It is not deemed necessary to set forth the pleadings of the defendants, for such can be stated in the course of the opinion where necessary.

Under the first assignment of error, which arises under pleas of jurisdiction and abatement, we have this proposition: "A suit or action instituted in the courts of Texas in a cause of action growing out of injury in the State of Louisiana, and when the laws of said State applicable thereto, either as to the right or remedy or defense, are essentially different from those of this State, the courts of Texas will not entertain jurisdiction of such suit or action."

The statute law of Louisiana on the subject was fully developed by the evidence, and its provisions in so far as they concern the right of parents to recover damage sustained by them from the loss of the

son, which is all that is sued for in this action, are not essentially different from what is provided by our statute in such cases. No difficulty presents itself to our courts in administering the remedy substantially as contemplated by the statute giving the right; and no matter of public policy of this State intervenes to deter the courts of this State from exercising jurisdiction. In the companion case to this, Texas & N. O. R. R. et al. v. Fannie Miller et al., *post,* 627, 128 S. W., 1165 (both having been tried at the same time), the opinion by Associate Justice Neill deals more extensively with this question, and gives our reasons fully for overruling the assignment.

Under the 'third assignment of error the third proposition is not well taken. It is true the proof of the Louisiana law developed that the statute of that State allowed compensation for loss of society and for mental anguish arising from the son's death, which are elements not allowed by our statute. Because our statute did not go as far as the Louisiana statute, and the latter includes more elements of damage than ours, affords no reason why the right of recovery attaching under the foreign statute should not or can not be administered fully in this State. The other point embraced by this assignment is that the testimony developed the fact that an Act of 1878·of the Legislature of Louisiana incorporating the defendant, the Louisiana Western R. R. Co., gave it immunity and exemption from liability for injuries resulting in death of its train operatives, and the amended statute of 1884 of that State creating actions in favor of certain relatives for such injuries, in so far as it might be intended to apply to the said defendant corporation, would impair the obligation of a contract and violate the Constitution of the United States, of Louisiana and Texas; and hence evidence concerning such statutory right of action brought about by said amended statute was improperly admitted.

On this question, also, the opinion in the said companion case is full. We have arrived at the conclusion, for reasons there given, that the Legislature was powerless to grant such immunity or exemption, and that such provision of the legislative character was of no effect as against the exercise by the State of its governmental functions. As far as mere property rights are concerned, there is no difference between the contract of a State and an individual and a contract between two individuals. (Jumbo Cattle Co. v. Bacon, 79 Texas, 13.) But it is manifestly a different thing for a Legislature to barter away, and thereby preclude future Legislatures from legislating upon, subjects pertaining to government. If the State Constitution provided for such an exemption as is presented here, which can not be presumed, there might be ground for sustaining the proposition. The Legislature doubtless had power to create a liability for damages for death arising from negligence of another. This power, if exercised in a constitutional manner, would be by a law general in its character. A law making certain railway companies liable, and not others. or exempting one and not others in such cases, would clearly be void. Consequently, if the special immunity granted to this defendant be valid, a situation was created in the State in which no law general in its application, and therefore no valid law on the subject, could be enacted. It must be held either that the immunity given this defend-

ant was a surrender altogether of the power of the State to legislate on this subject, or that the statute of 1884 included this defendant in its operation. It can not, we think, be successfully claimed that the Legislature may, by a contract with a person or corporation, include that which would necessarily consist in a surrender of its right to legislate on a subject of this character. The assignment is overruled, and likewise the fourth and fifth assignments. There is but one proposition under the thirteenth assignment, and the above views require that it be overruled.

We pass to the eighth assignment, which contends, first, that there is no pleading of negligence of defendants in leaving a dead animal near the track, whereby other animals were attracted into the right of way, thereby causing an obstruction and the derailment, and it was therefore error for the court to base its judgment on a conclusion of fact to that effect. The finding was: "I find that some hours previous to the derailment that another of defendants' trains had struck an animal of the cow species near the place of derailment, and the carcass was allowed to lie upon the right of way within a short distance of a gate in the right of way fence, and that several hours prior to the derailment a number of cattle entered the right of way through said gate, and were seen by employes of defendants in charge of one of defendants' eastbound trains gathered about the dead one holding a 'ceremony,' as expressed by one of the witnesses; that the said cattle were probably attracted upon the right of way by the dead one; and I find that defendants knew, or ought to have known by the exercise of ordinary care, of the presence of the dead animal upon the right of way, and knew, or would have known by the exercise of such care, that if the gate was open that cattle would probably be attracted therein by the dead one, or would enter therein of their own volition; and knew of the presence of the cattle which were gathered about the dead one in time to have notified the conductor and engineer of the train of that fact and in time to have removed the cattle from the right of way; and I find that it was the duty of defendants, and the section men upon the section upon which the cattle were, to have removed said cattle, or, failing to do so, to notify said conductor and engineer of the presence of said cattle upon the right of way, and that they could have notified them, etc; . . . and I find that defendants were guilty of negligence in permitting the cattle to be and remain upon the right of way under the circumstances, and in failing to remove them from the right of way before the accident, or in not giving the conductor and engineer notice of their presence upon the right of way, and that such negligence was the proximate cause of the death of Gross."

The petition alleged negligence, first, in allowing the animal which derailed the engine to be upon the right of way and track, by having the fence out of repair, or by allowing a gate to remain open an unusual length of time; second, in knowing of the presence of the cattle under the fences long enough to have had the cattle removed therefrom, or to have notified the conductor and engineer of their presence there; and third, that a previous train had crippled or wounded the

animal struck by the train in question, which animal was left in a wounded and disabled condition near the track, and that the animal scrambled upon the track, where it remained until struck, and that said animal would probably work its way upon the track and become a dangerous obstruction to passing trains was something that a person of ordinary prudence would have foreseen as likely to occur under the circumstances, and in the exercise of ordinary care should have been guarded against.

We think the findings of the court sufficiently brought the case within the second of the above forms of negligence pleaded. The gist of the negligence, as found by the court, was knowledge of the presence of the animals within the fences long enough to have made it the duty of defendants, in the exercise of ordinary care, to have seen that they were removed, or to have notified passing trainmen, and the failure to do so.

The second proposition under the eighth assignment is, that the testimony did not identify the animal which derailed the train as being one of the animals theretofore observed at or about that place on the right of way. We overrule this, as we think the conclusion was warranted.

We overrule the ninth assignment, and hold that it did not appear undisputedly from the evidence that Gross assumed the risk.

We overrule the tenth and eleventh assignments of error. They relate to certain rules that were introduced, the bill of exceptions showing that they were objected to because irrelevant and immaterial to any issue in the case as to either of the defendants. The proposition under these assignments is that, there being no evidence that these rules had been promulgated or established by the Texas & New Orleans Railway Company, they were immaterial and irrelevant to any issue in the case so far as the Texas & New Orleans Railway Company was concerned. This was not the objection presented to the trial judge. We overrule the assignments.

We also overrule the sixth and seventh assignments of error because we think the testimony warranted the court in making the following findings of fact which are complained of: 1st. "That defendants were jointly engaged in the business of operating the said railways as one continuous line from Houston, in Harris County, Texas, to Lafayette, in Louisiana, and, in so doing, used indiscriminately on either the engines, rolling stock and employes of the other as the business or convenience required, and each hired for and discharged employes in the joint business, and the employes by one were required to perform and did perform services on the railway of the other; that such employes made continuous runs on trains operated from Houston to Lafayette and *vice versa,* and that both defendants were jointly engaged as common carriers of freight and passengers for hire between Houston and Lafayette over said railways as a continuous route, and were partners in such business, sharing in the profits and losses thereof." 2d. "That the railway of the 'Louisiana Company' ran through a country in which there were numbers of cattle; and the said company fenced its right of way for the purpose of excluding cattle therefrom; and that the fences were effectual to exclude cattle

from the right of way when ordinary care was used to keep them in proper repair and when such care was used to keep the gates closed; and the employes operating trains over the said railway relied upon the company to keep the fence in repair and the gates closed, to the end that they might not be exposed to the peril of injury by the derailment of engines and cars coming in contact with cattle which would otherwise enter upon the right of way and track."

From the first of the above findings of fact the overruling of the twelfth assignment necessarily follows.

Under the fifteenth assignment of error is advanced this proposition: "A judgment by a Texas court, which awards damages in an unusually large sum for injuries in the State of Louisiana, resulting in the death of an adult son of the plaintiffs, based on measures of damage according to the laws of Louisiana admitted in evidence over the defendants' objection, and including therein elements not recognized or allowed by the laws of Texas, should be set aside as excessive, unwarranted and void."

As hereinbefore mentioned, the Louisiana statute, in addition to the pecuniary loss sustained, allowed for the deprivation of the decedent's society and solace, expenses of his death and burial, and also for mental suffering of the survivors. The point made is that our courts can not or should not allow for such elements of damage, as our Legislature has seen fit not to provide for them in our statute. This right of action arose, not under our statute, but under that of Louisiana, which fixes both the right and the extent thereof. There exists no insuperable, or even inconvenient, difficulty in arriving at the damages as allowed by the Louisiana statute, or in enforcing the judgment substantially in form and substance as would be done in that State. The right to recover damages existing, it would seem to be wholly immaterial whether the cause of action arises at common law or by statute, as to it being enforcible in the courts of another State, especially so when the law of the forum recognizes and gives a similar right of action for the same cause. We can see no sound reason for recognizing the foreign statute so far as it accords with what our statute allows in such cases and refusing to give it any further enforcement on account of our statute which has nothing to do with the cause of action. The courts of this State should in such cases, on principles of comity, hear and determine the right as it exists, and enforce it in its entirety, or not at all.

The judgment is affirmed.

*Affirmed.*

Writ of error refused.