**Raymond W. DIETRICH, Appellant,**

**v.**

**F. R. YOUNG COMPANY et al., Appellees.**

**No. 14749.**

Court of Civil Appeals of Texas.

Houston.

March 3, 1966.

Rehearing Denied March 24, 1966.

Miller & Gann, Wm. Mac Gann, Houston, for appellant.

Fulbright, Crooker, Freeman, Bates & Jaworski, Jim M. Perdue, Houston, for appellees.

WERLEIN, Justice.

This is an appeal from an order of the trial court granting a summary judgment. Appellant, Raymond W. Dietrich, sued F. R. Young Company and William A. Jackson, to recover damages for personal injuries sustained by him when an automobile owned and driven by Jackson, and in which appellant was riding, overturned when Jackson failed to negotiate a curve on a road between Richmond and Sealy, Texas, shortly before midnight, March 6, 1963.

Appellant alleged that his injuries were proximately caused by various negligent acts and omissions on the part of Jackson, who was acting in the course and scope of his agency for appellee, F. R. Young Company. He further alleged that at the time of the accident he was a "business invitee" of appellees, and that the trip during which the accident occurred was in furtherance of the business relationship between appellees and appellant and appellant's employer, from which appellees expected to receive tangible benefits of a pecuniary nature.

Appellees filed a pleading of general denial, and also a motion for summary judgment in which they stated that on the occasion in question appellant and Jackson were engaged in an enterprise which was primarily, if not solely, social; that there was a constant course of business dealings between appellant and Jackson; that there were no specific dealings between the parties on March 6, 1963, and at the time of the accident in question appellant was a guest in Jackson's automobile and was neither a paying passenger nor a business invitee; and that since no gross negligence was pleaded or relied upon, appellant could not recover. Article 6701b, Vernon's Annotated Texas Statutes.

Appellant asserts that the court erred in rendering summary judgment because there were genuine issues of material fact as to whether appellant was a business invitee or a guest at the time of the accident. Appellant and Jackson in their depositions gave substantially the same testimony with respect to what happened on the occasion in question. Jackson was the Secretary of F. R. Young Company, a corporation, and worked on a salary and for a share in the profits of such company, and he had a car allowance. Appellant worked for Barber, Inc., on a salary, and was the purchasing agent for said company which was engaged in the business of commercial building. The F. R. Young Company was engaged in the business of selling commercial supplies and materials, especially heating and air-conditioning equipment. Jackson's work for the corporation consisted in part of contacting consulting engineers and selling to contractors. He considered entertaining customers as part of his job, and had entertained appellant as a customer in the past and subsequent to the accident. Barber, Inc. was one of F. R. Young Company's better customers, doing a business possibly averaging $30,000.00 to $40,000.00 a year.

Appellant and appellee Jackson had known each other over a period of some 12 or 15 years, and were friends. Each of them was married and had children, and each had met the other's family. For a number of years there had been a constant course of business dealings between appellant and Jackson for their respective companies, and since the accident and the filing of this suit the two had continued to transact business. In the Spring of 1963 Barber, Inc. was working on a contract that had been awarded on the Springwood Senior High School and was purchasing some equipment from the F. R. Young Company, which purchase was being made by appellant through Jackson. Appellant testified in his deposition that the material and equipment which was to be purchased

and the purchase price had been agreed upon prior to March 6, 1963, the date of the accident, although the purchase orders had not been signed.

Sometime during the day of the accident appellant and Jackson were talking to each other and Jackson said in connection with a products show and cocktail party that was being held by Fishbank & Moore in the Rice Hotel, and to which each had received an invitation, "We are both going down there; I'll come by and pick you up." Pursuant to such arrangement, Jackson picked up appellant about 4 p. m. They stopped at the Whango Bar and had a couple of drinks and Jackson bought a pint of whiskey. They stayed in the bar about an hour and a half, or two hours, and then went to the Rice Hotel, according to appellant's testimony. There they had some free drinks and food. Neither of them appeared to be inebriated. They were not together all the time while at the Rice but mingled with others. Appellant testified that they stayed at the Rice Hotel a little later than 10 p. m. He was asked to relate how he and Jackson decided to go to Fort Bend County where the accident occurred and the purpose of their visit. He testified:

A. Well, it was just one of those things, we just got together on, I guess, decided it was the right thing to do at the time, so we went down to Richmond * * *

He was then asked:

Q. And the purpose of the trip was, we can say generally and broadly, "pleasure?"

A. Yes, sir.

    *    *    *    *    *    *

Q. That is what you had in mind when you left?

A. Yes, sir.

Appellant testified that he had done business continuously with the Young Company since the accident. He was asked whether he had any business dealings going on with Jackson at the time of the accident, and testified that his company had just been awarded the contract on the new Springwood Senior High School, and he was in the process of buying all the equipment for such job, and that he had bought some of it from Jackson for such school. He was then asked:

Q. You-all had agreed on what you were going to buy from them and the purchase price?

A. Yes, sir.

Q. And the only thing that remained was the signing of the purchase order?

A. Yes, sir.

He also said: "Well, I would probably have closed that that day, or the day before; but at any rate I had not signed the purchase orders. And while I was in the hospital my boss signed the purchase orders that I had dictated to the secretary." He further testified:

Q. And you had reached your agreement as to what you were going to buy from the F. R. Young Company before the day of the accident?

A. Yes, sir.

Appellant also testified that the prices to be paid to F. R. Young Company and the items to be bought, with the exception of some small items, which didn't amount to much, had been decided upon between him and Jackson before the accident occurred. There is no evidence that any definite business matters were discussed or mentioned by appellant or Jackson at any time on the trip to the Rice Hotel or from the Rice Hotel to Richmond or from there to the place where the accident occurred, although when asked if he discussed that night anything about the school job, Jackson testified:

A. Not to my knowledge.

Q. Possibly could have done and don't remember it?

A. Possibly. And talking about various things; I mean it is very, very conceivable that we did talk about it.

It is our view that the trip to the Rice Hotel was primarily for social purposes. Both men had received invitations to attend the cocktail party at the Rice Hotel and to see the exhibits which were on display. It was the intention of both to attend the party, and they arranged to go together since each was going anyway. There, by mutual agreement, they decided to go to Richmond. The motivating purpose was solely pleasure. As appellant testified, their purpose was "generally and broadly, pleasure".

According to appellant's testimony the material and equipment which was to be purchased for the school job, and the purchase price therefor, had been agreed upon prior to March 6, 1963, with the exception of a few insignificant items. There was a general course of business between appellant's employer and Jackson's firm, and there appears to have been no reason for any further discussion concerning that job. There is nothing in the record to indicate that the trip in question and the furnishing of transportation by Jackson had anything at all to do with such purchase and sale or any contemplated purchase or sale. It is true that salesmen undertake to keep the good will of customers and prospective customers by furnishing entertainment on occasions. This alone seems to be insufficient in itself to make the customer a business invitee on all occasions when transportation is furnished for entertainment. In the instant case the transportation furnished by Jackson was not in connection with any definite tangible benefit expected to enure to him as a motivating influence for furnishing such transportation.

In Burt v. Lochausen, 1952, 151 Tex. 289, 249 S.W.2d 194, the Supreme Court quoted with approval the language used by the Court of Civil Appeals in such case [244 S.W.2d 915, 917] as follows:

"'The rule established by the authorities everywhere seems to be, to remove a case from the provisions of such (guest) statutes a definite relationship must be established and a definite tangible benefit to the operator shown to have been the motivating influence for furnishing the transportation. * * *

"'The benefits suggested by plaintiff are thought to be too uncertain, remote, and speculative to be definite and tangible.'"

As in Burt v. Lochausen, the benefits suggested by appellant in this case are too uncertain, remote and speculative. There is nothing to indicate that the trip in question was ever intended to be more than a mutual social undertaking. There is nothing to show that either party had any expectation of definite tangible benefits growing out of the trip or enuring to either party therefrom. The testimony of both men seems to negate any such motivating purpose.

In El Paso City Lines v. Sanchez, Tex. Civ.App., 306 S.W.2d 396, writ ref., n. r. e., the court said:

"It is plain to us that the main purpose of the trip to town was to get food. If the purpose had been to further discuss their business, this discussion could have been had at the tourist court even better than while riding to town. We therefore hold that the main purpose of the trip was to get food; that Sanchez rode with DeLora at his invitation and shared no part of the expense; that the discussion of their business while riding toward town was merely incidental to the trip. We consider Burt v. Lochausen * * * controlling here, although the business discussion had not been concluded as thoroughly in this case as it had in the Lochausen case."

See also Matlock v. L. A. Hooge, Tex.Civ. App., 365 S.W.2d 386, writ ref., n. r. e.; McCarty v. Moss, Tex.Civ.App., 225 S.W.

2d 883, writ ref.; Wills v. Buchanan, Tex. Civ.App., 358 S.W.2d 727.

In the present case the undisputed testimony shows that the motivating cause of the trip, and certainly the main purpose, was mutual pleasure not connected in any way with any business transaction. No definite tangible benefit to Jackson was shown to have been the motivating influence for furnishing the transportation. In Raub v. Rowe, Tex.Civ.App., 119 S.W.2d 190, writ ref., the court quoted with approval the following statement of the Supreme Court of California in McCann v. Hoffman, 9 Cal. 2d 279, 70 P.2d 909, 912:

" 'The relationships which will give rise to the status of a passenger must confer a benefit of a tangible nature and are limited. * * * Therefore, where a special tangible benefit to the defendant was the motivating influence for furnishing the transportation, compensation may be said to have been given. But it is not given where the main purpose of the trip is the joint pleasure of the participants.' "

The case of Schafer v. Stevens, Tex.Civ. App., 352 S.W.2d 471, relied upon by appellant, is distinguishable from the instant case. In that case there was no doubt that the meeting of Schafer and Stevens at the Sky Riders' Club was a business appointment. The men stayed at the club for some time and they then quit talking business later on in the evening. When the club closed, they decided to go to Trader Hank's, which operated at later hours. They had quit talking business and according to the defendant the transfer of the activities to Trader Hank's was a social affair. However, the court refers to other portions of the defendant's testimony that indicated that while the conversation had turned from business to a social level, this was merely a tactic used to get Stevens more inclined to do business at a later time. The defendant testified in response to questions by the plaintiff's attorney that the "whole purpose with Tom Stevens that night * * * was to get his company, Tex-Mex, and him, interested in this mining venture." In the instant case there was no business appointment or evidence of probative force of any discussions between appellant and appellee as to any business or business deals pending or anticipated.

In resolving all doubts as to the existence of a genuine issue of material fact most favorably to appellant, as we are required to do, we are of the opinion that the court properly granted the summary judgment in favor of appellees. Great American Reserve Ins. Co. v. San Antonio Plumbing Supply Company, Tex.Sup.1965, 391 S.W.2d 41; Gulbenkian v. Penn, 1952, 151 Tex. 412, 252 S.W.2d 929.

Judgment affirmed.