**Lucy MARMON et al., Appellants,**

**v.**

**MUSTANG AVIATION, INC., Appellee.**

**No. 11487.**

Court of Civil Appeals of Texas.

Austin.

May 24, 1967.

Appellants' Motion for Rehearing and Appellants' Amended Motion for Rehearing Denied June 14, 1967.

White, McElroy & White, Adair Dyer, Jr., Dallas, for appellants..

Harris, Anderson, Henley, Shields & Rhodes, L. W. Anderson, Dallas, for appellee.

O'QUINN, Justice.

Suit was brought in Dallas County for wrongful death of passengers in a chartered aircraft that crashed into the side of a mesa

in Colorado on November 3, 1964. The pilot and all the passengers were killed. Everyone aboard the plane was a resident of Texas, except one passenger who resided in Illinois.

At the time of the accident, the plane was returning to Texas, after take-off at Billings, Montana, on the last leg of an extensive journey. The passengers had left Texas about ten days previously on a business trip to western United States, with stops in New Mexico, Nevada, Oregon, and Montana.

Each of the two defendant corporations was domiciled in Texas. Three of the four passengers killed were executives of Dr. Pepper Company, a corporation having its principal place of business and its national headquarters in Texas. The trip west had been made in behalf of Dr. Pepper Company under a contract made by this company in Texas with Mustang Aviation, Inc., appellee, whose principal place of business was Love Field, Dallas, Texas. The pilot had been hired in Texas, and the aircraft was garaged, maintained, licensed, and contracted for in Texas.

The only connection between the aircraft, its pilot and passengers, with the State of Colorado was the crash itself near Kim and a landing at Denver earlier that day for refueling and to obtain weather information, which took about an hour.

The question to be decided is whether the law of Colorado, the place of the accident, or the law of Texas, the place of trial, shall be followed and applied.

The Texas wrongful death statute places no limit on compensable damages. The Colorado statute imposes a limit of $25,000 for each death. This limitation is the principal difference between the two statutes. Under the judgment of the district court, this difference, depending upon final determination of the case in the appellate courts, could amount to $100,000.

The cause was submitted to the trial court under an agreed statement of facts, pursuant to Rule 263, Vernon's Ann.Rules Civ.Proc., and the court's judgment makes allowance for the several results that might flow from a final decision in the appellate courts.

The district court applied the law of Colorado, awarding damages in the sum of $24,000 to each group of survivors of the four passengers. The sum of $96,000 was paid into the registry of the court to be distributed equally to each of the four groups of survivors. The judgment provided for an additional sum of $100,000 to be paid by appellee if on appeal it is found the trial court should have applied the Texas law imposing no limit on damages, instead of the Colorado law limiting compensable damages.

Appellants, survivors of the four passengers, contend that the law of Texas should have been followed by the trial court. Appellants seek to show that because Texas is the state having the most significant total relationship with the flight and the sole significant interest in the measure of recovery allowed to those survivors who are residents of Texas, the arbitrary limitation on damages recoverable under the Colorado wrongful death statute should not be applied by the Texas courts to limit appellants' recovery.

Appellee contends that Article 4678, Vernon's Ann.Tex.Civ.Stats., controls this case in its entirety. This statute, with emphasis added to the same clauses accented by appellee, reads as follows:

"Whenever the death or personal injury of a citizen of this State or of the United States, or of any foreign country having equal treaty rights with the United States on behalf of its citizens, has been or may be caused *by the wrongful act, neglect or default of another in any foreign State or country* for which a right to maintain an action and *recover damages thereof is given by the statute or law of such foreign State* or country, such right of action may be enforced in the courts of this State within the time prescribed for the commencement of such actions by the statutes of this State. The law of the

forum shall control in the prosecution and maintenance of such action in the courts of this State in all matters pertaining to the procedure."

Appellee argues that Article 4678 specifically holds that the damages recoverable are the damages designated by the foreign state that created the cause of action. Appellee asserts that the Texas courts have consistently held that the question of damages, as well as the creation of the cause of action, is controlled by the law of the foreign state in which damages arose.

Article 4678 had its origin in a statute passed by the Texas Legislature in 1913, amended in 1917, and included as amended, with no substantive change, in the Revised Civil Statutes of 1925. Acts 1913, 33rd Leg., ch. 161, p. 338; Acts 1917, 35th Leg., ch. 156, p. 365.

In 1922 in a wrongful death case the Texas Commission of Appeals, in an opinion adopted by the Supreme Court, construed the statute and held that, while the statute required Texas courts to follow the law of this state in all matters pertaining to procedure, the law of the place where the negligent killing occurred must be applied as to substantive matters. Jones v. Louisiana Western Ry. Co. (Tex.Com.App., 1922), 243 S.W. 976.

On this point the Court stated:

"It is the cause of action given by the law of the state in which the negligent killing occurred that our courts are authorized to enforce. The law of the place where the cause of action arose, the lex loci delictus, must determine the nature of the cause of action, and the defenses, if any, available. The case asserted must stand or fall upon that law." 243 S.W. 976, 978, col. 2.

Jones v. Louisiana Western Ry. Co., supra, was decided in October, 1922. Shortly thereafter, in February, 1923, the Texarkana Court of Civil Appeals, in a case in which the Supreme Court refused a writ,

decided that Texas courts may award damages for mental and physical suffering in a wrongful death suit, brought in Texas for negligent killing in another state, if such recovery would be allowed in the foreign state, even though not recoverable in Texas on the same tort if committed in this state. Davis v. Gant, Tex.Civ.App., Texarkana, 247 S.W. 576 (writ ref.). Precisely, the court held that, "While our statute does not authorize a recovery of such damages when the injury occurs in this state, article 7730½, as contained in Complete Texas Statutes of 1920 [Article 4678, R.S. 1925], permits such a recovery when authorized by the laws of another state where the injury occurs." 247 S.W. 576, 580, col. 2.

In October, 1923, about a year following the decision in Jones v. Louisiana Western Ry. Co., the Commission of Appeals again construed the statute and dismissed the lawsuit for want of jurisdiction, holding that the laws of Mexico were so materially dissimilar to Texas laws as to be incapable of enforcement or application by Texas courts for personal injuries occurring in Mexico. El Paso and Juarez Traction Co. v. Carruth (Tex.Com.App., 1923), 255 S.W. 159.

In reaching this decision the Commission followed an earlier holding of the Supreme Court in Mexican National Railroad Co. v. Jackson, 89 Tex. 107, 33 S.W. 857, 31 L.R.A. 276 (1896), as to want of jurisdiction where great dissimilarity in laws prevented application of foreign laws by Texas courts.

More recently, the holding in El Paso and Juarez Traction Co. v. Carruth, supra, has been followed in a suit in Texas for injury in an aircraft take-off after forced landing in Mexico. Carter v. Tillery, Tex. Civ.App., Amarillo, 257 S.W.2d 465 (writ ref. n. r. e.). In that case the court construed Article 4678 to hold that the law of the place where injury occurred will control. The case was dismissed because the Texas tribunal did not have power or authority to apply and enforce the law of Mexico as to damages, awarded in Mexico on a periodic

basis instead of lump sum as provided under Texas law.

In contending that the Colorado statute limiting the amount of recovery should not control, and that the Texas law containing no such limitation should prevail, appellants advocate a doctrine of recent origin. That doctrine holds that the most significant relationship with the occurrence, and with the parties, should determine the rights and liabilities of the parties. This is clearly contrary to the general rule followed in Texas that the courts look to the law of the place where the wrongful act or neglect took place.

The evolution of the new doctrine is best illustrated by the change in the Restatement, Conflict of Laws. The original Restatement directed looking to the law of the place of the wrong, which was characterized as the "state where the last event necessary to make an action liable for an alleged tort took place." (Sec. 377). In a tentative draft, invoked by appellants and cited by authorities embracing the doctrine, the Restatement, Second, Conflicts of Law, looks to the "local law of the state which has the most significant relationship with the occurrence and with the parties." Tentative Draft No. 9, sec. 379. See: Seguros Tepeyac, S.A., Compania Mexicana, etc. v. Bostrom (U.S.C.C.A., Fifth Cir., 1965), 347 F.2d 168, 175, col. 2, and footnote 4a quoting Restatement, pp. 175–176.

In applying the doctrine, a court will consider various important contacts in deciding which state, that of the forum or that of the foreign state, had the more significant relationship with the event, out of which the injury came, and with the parties themselves. These important contacts will include the place where the injury and the conduct occurred, the domicile, place of incorporation and place of business of the parties, and the place where the relationship between the parties is centered. Finally, in determining the relative importance of the contacts, a court will consider the issues of the case, the character of the tort, and the relevant purposes of the tort rules of the interested states. (Sec. 379, par. 3).

It is obvious that by this yardstick appellants would be able to show abundant significant relationship of the parties with Texas. The only important contact with Colorado was a stop for fuel and information, followed by striking the mesa, while flying over the state en route to Texas. Enumeration of the important contacts establishing the significant relationship of the parties with Texas would add nothing to what the facts already stated clearly demonstrate.

The doctrine of most significant contacts emerged from a congress of critical studies by eminent authorities writing on conflicts of laws. George W. Stumberg, professor of law for many years at the University of Texas, and a recognized authority on conflicts of laws, concluded, after criticism of the place of tort rule, " * * * that the social function of the law * * * might be better served by recognition of the importance of the purposes behind competing rules of substantive law, even though as a result there may be a sacrifice of a rule which seems easy to apply and which, therefore, may make for facility of prediction." Stumberg: Principles of Conflicts of Laws (3rd Ed. 1963).

Among the comments on both sides of the question are these notes and comments in law reviews: Note, 77 Har.L.Rev. 355 (1963); Comments on Babcock v. Jackson, a Recent Development in Conflict of Laws, 63 Colum.L.Rev. 1212 (1963); Note, Wilcox v. Wilcox: The Beginning of a New Approach to Conflict of Laws in Tort Cases, 1966 Wisc.L.Rev. 913; Note, The Impact of Babcock v. Jackson on Conflict of Laws, 52 Va.L.Rev. 302 (1966).

Seven states have adopted the most significant contacts rule for choice of law in tort cases. The rule has been followed by federal courts in four circuits and by United States district courts in at least two states. Now considered a landmark case in

departure from the place of tort rule is the case of Kilberg v. Northeast Airlines, Inc., 9 N.Y.2d 34, 211 N.Y.S.2d 133, 172 N.E.2d 526, decided in 1961. In that case the New York Court of Appeals, considering a suit for wrongful death of a New York citizen killed in Massachusetts on a weekend flight from New York, refused to apply the Massachusetts limit of $15,000 for damages. The New York court held that recovery could be had under the Massachusetts wrongful death statute, but refused to apply the limitation on damages as against New York public policy.

The decision of the New York court in Kilberg v. Northeast Airlines, Inc., was tested for constitutionality in 1962 in Pearson v. Northeast Airlines, Inc. (U.S.C.C.A. 2 Cir.), 309 F.2d 553, 92 A.L.R.2d 1162, cert. denied, 372 U.S. 912, 83 S.Ct. 726, 9 L.Ed.2d 720 (1963), in which the circuit court affirmed judgment of the trial court following the rule of the Kilberg case.

Other decisions have followed each year in which the rule of most significant contacts has been applied in departure from the older rule that the place of the tort controls. In 1963 the New York court had before it a suit for injury in an automobile accident in Ontario, Canada, involving a driver and his guest, both residents of New York, on a trip to Canada and return to New York. In defense, the Ontario guest statute was pleaded. New York did not have a guest statute, but the court refused to apply the Ontario guest statute on a determination that New York had a substantial relationship and a substantial interest in application of New York policy, while Ontario had a minimal interest. Babcock v. Jackson, 12 N.Y.2d 473, 240 N.Y.S. 2d 743, 191 N.E.2d 279, 95 A.L.R.2d 1.

Following the decisions by the New York courts in the Kilberg case and the Babcock case, the Supreme Court of Pennsylvania refused to apply the Colorado limitation on compensatory damages in Griffith v. United Air Lines, Inc., 416 Pa. 1, 203 A.2d 796 (1964). In that case deceased, a resident

of Pennsylvania, bought a ticket in Pennsylvania for a flight to Arizona and return. He was killed in Colorado in a scheduled landing. The court found these and other facts showed more significant contacts with Pennsylvania and applied the law of the forum. Since that time the courts in Minnesota, Wisconsin, Iowa, Florida, and New Hampshire have applied the most significant contacts approach for choice of law in tort cases.

Application of the new doctrine with practical and just results is outstandingly demonstrated in the decision of the United States Court of Appeals, District of Columbia Circuit, in Tramontana v. S. A. Empresa de Viacao Aerea Rio Grandense, 121 U.S. App.D.C. 338, 350 F.2d 468 (1965). More recently, the United States Court of Appeals, Second Circuit, followed the rule of most significant contacts in a case arising out of the same flight from New York to Massachusetts involved in Kilberg v. Northeast Airlines, Inc., supra, and Pearson v. Northeast Airlines, Inc., supra. Gore v. Northeast Airlines, Inc., 373 F.2d 717 (1967).

To hold with the doctrine appellants would have this Court adopt, we would be required to depart from a rule settled in this state by a long line of decisions. At the head of this line, at least in its influence on the courts since 1904, is Slater v. Mexican National Railway Company, 194 U.S. 120, 24 S.Ct. 581, 48 L.Ed. 900. This suit was brought in Texas for a wrongful death occurring in Mexico. The Supreme Court of the United States, in an opinion by Justice Holmes, stated the rule that " * * * as the only source of this obligation is the law of the place of the act, it follows that that law determines not merely the existence of the obligation * * * but equally determines its extent."

In a strong dissent in the Slater case, Chief Justice Fuller, joined by two other justices, portended the doctrine of most significant contacts and also suggested the reasoning, employed in the Kilberg case,

that the "method of arriving at and distributing the damages pertains to procedure" to be regulated by the law of the forum. (This theory in the Kilberg case was disapproved in Davenport v. Webb, 11 N.Y.2d 392, 230 N.Y.S.2d 17, 183 N.E.2d 902, in 1962, in favor of public policy as a basis for the decision).

Without discussing in detail the facts and holdings, we summarize results in other cases we regard as significant in the body of case law in this state supporting the rule that the *lex loci delictus* will be applied in tort actions.

The nature and extent of the damages for a wrongful death occurring in Louisiana, as well as the right to recover damages, was held to be controlled by the law of Louisiana in Texas and New Orleans Railroad Co. v. Miller, Tex.Civ.App., San Antonio, 60 Tex.Civ.App. 627, 128 S.W. 1165 (writ ref.).

In an action in Texas for death occurring in Arkansas, the Texas court looked to Arkansas statutes in holding that the right to recover damages had its source in Arkansas law. The Texas court held that it must look to the Arkansas statute to determine what the obligation was, to whom it would run, and the persons by whom or for whose benefit recovery could be had. Nealy v. Magnolia Petroleum Co., Tex.Civ.App., El Paso, 121 S.W.2d 425 (writ ref.).

■ In addition to these cases, the following are a part of the body of case law definitely placing this state with the majority adhering to the rule that the law of the place of the wrong controls all but procedural matters. Withers v. Stimmel, Tex. Civ.App., Dallas, 363 S.W.2d 144 (writ ref. n. r. e.); Gammage v. Weinberg, Tex. Civ.App., Houston, 355 S.W.2d 788, 95 A.L. R.2d 1086 (writ ref. n. r. e.); Grandstaff v. Mercer, Tex.Civ.App., Fort Worth, 214 S.W.2d 133 (writ ref. n. r. e.).

■ On the strict question of measure, extent, and amount of damages recoverable in a wrongful death action, the general rule is that determination is by the law of the place where the wrong causing the death occurred, founded on the view that measure, extent, and amount of damages pertain to the substance of the right of recovery, governed by the law of the place where the action arose. 92 A.L.R.2d 1180, 1185–1191, citing Texas and New Orleans Railroad Co. v. Miller, supra, Davis v. Gant, supra, and Texas and New Orleans Railroad Co. v. Gross, Tex.Civ.App., San Antonio, 60 Tex.Civ.App. 621, 128 S.W. 1173 (writ ref.).

In examining the law and the record of this case we have been ably aided by exhaustive and illuminating briefs of counsel on both sides of the question, as well as by painstaking and persuasive works of competent amici curiae. The research of counsel and their skillful presentations have been most helpful to the Court, and have contributed a large measure of pleasure to the task of working out our conclusions.

■ We have been urged to adopt the new doctrine of most significant contacts. We find much merit in the doctrine, and, if free to act in a cause of first impression, we would be inclined to explore the doctrine more fully with a view to consideration of adoption. But we are bound by Article 4678 and the construction placed on the statute by the Supreme Court and by decisions of other courts of Texas. The possibility has been suggested that we consider the limitation on damages a matter of procedure, and not a matter of substance of the right of recovery. This we cannot do because we regard this as an unsound approach to the problem and contrary to the holdings in Texas and New Orleans Railroad Co. v. Gross, Texas and New Orleans Railroad Co. v. Miller, and Davis v. Gant. We do not agree with the reasoning of the New York court that did take this route in the Kilberg case.

Lastly, we are urged to adopt the doctrine on the theory that the Colorado statute with its limitation on damages is contrary

to public policy of this state. We think the Supreme Court of Texas precluded this route in Flaiz v. Moore, 359 S.W.2d 872 (Tex.1962).

This Court as an intermediate appellate state court is without the freedom found by the United States Circuit Court in Tramontana v. S. A. Empresa de Viacao Aerea Rio Grandense, supra. There the court said:

> "The Supreme Court, in its decision in Richards v. United States, 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962), and many earlier cases, has recognized the inadequacies of the theoretical underpinnings of *Slater* and its progeny. The latter cases have a highly attenuated precedential weight, both in authority and reason. *Thus we are free to explore the question presented by this appeal in the light of the newer concepts of conflict of laws.*" (Emphasis added.) 350 F.2d 468, 471, cols. 1–2.

■ Courts of Civil Appeals of Texas have the duty to follow decisions of the Supreme Court of this state. Ball v. Gulf States Utilities Co., Tex.Civ.App., Beaumont, 123 S.W.2d 937 (writ dism'd); Grand Prize Distributing Company of San Antonio v. Gulf Brewing Co., Tex.Civ.App., San Antonio, 267 S.W.2d 906 (writ ref.); Clayton v. Clayton, Tex.Civ.App., Texarkana, 308 S.W.2d 557 (no writ); McClelland v. Briscoe, Tex.Civ.App., Houston, 359 S.W.2d 635 (writ ref. n. r. e.); Campbell v. Campbell, Tex.Civ.App., Austin, 362 S.W.2d 904, 3 A.L.R.2d 1206 (writ dism'd).

Applying to this case the language of Justice Norvell and the holding in Grand Prize Distributing Co. of San Antonio v. Gulf Brewing Co., supra, we conclude that, "while some change in approach to the problem or difference in philosophy may be indicated by the cases cited," we consider the decisions of the Supreme Court of Texas contrary to the doctrine advocated by appellants, "and since these cases are squarely in point, it becomes our plain duty to follow them." 267 S.W.2d 906, 908, col. 1.

■ The Supreme Court of Texas has power to overrule or modify its former decisions, although this Court does not presume to suggest or urge that the Supreme Court exercise that prerogative in this cause. Connecticut General Life Ins. Co. v. Bryson, 148 Tex. 86, 219 S.W.2d 799; Federal Royalty Co. v. State, 128 Tex. 324, 98 S.W.2d 993.

We believe the district court correctly decided the case, and that the judgment of the trial court should be in all things affirmed.

The judgment of the district court is affirmed.

Affirmed.