**S. C. BROWN et al., Appellants,**

**v.**

**William A. SELTZER, Appellee.**

**No. 15224.**

Court of Civil Appeals of Texas.

Houston (1st Dist.).

Feb. 15, 1968.

Rehearing Denied March 7, 1968.

 

McNicholas & Crawford, Walter J. Crawford, Jr., Beaumont, for appellants.

Orgain, Bell & Tucker, Beaumont, for appellee; John G. Tucker, Gilbert I. Low, Beaumont, of counsel.

COLEMAN, Justice.

This is a suit for damages brought by appellants, the mother and father of one Troy Brown, who was killed when the automobile in which he was a passenger collided with a highway signpost.

Appellants contend that the trial court erred in the manner by which the requirements of the Texas Guest Statute (Article 6701b, Vernon's Ann.Tex.Civ.St.) were submitted to the jury, and also in applying the substantive law of Texas (Article 6701b, V.A.T.S.) since the State of New York had the most "significant contacts" with the transaction and parties involved in the occurrence made the basis of this suit.

On or about July 28, 1965, appellee, accompanied by Troy S. Brown and Jay Kalotkin, was traveling in an automobile, owned by appellee's mother, on Interstate Highway No. 10 in Chambers County, Texas. Appellee was driving the automobile. As he was attempting to pass an automobile in front of him, he applied his brakes and his car skidded sideways into a signpost adjacent to the right hand lane of the highway. The collision cut the car in half. Appellee was thrown from the car and was not injured. Both Brown and Kalotkin were killed.

Seltzer and Kalotkin were domiciliaries of the State of New York, as was the owner of the car. Brown was a resident of California, and had been attending college in that State. Some months previously he had sold his car and had used the proceeds to make an extended trip to Europe. On May 1, 1965, he returned to New York, and secured work in a lodge in upstate New York in order to get enough money to return to California. About two weeks before the date of the collision he met Kalotkin and Seltzer.

The only information concerning the trip and the plans preceding it necessarily comes from the testimony of Seltzer. He testified that the trip to Mexico came up after he met Brown. In describing the plan he said: "Well, our destination was Mexico. We were going to sightsee, you know, spend some time at the beach, travel around Mexico a little bit. Nothing specific. We planned, you know, day by day, what you call it."

They had decided that they would like to see Acapulco and Mexico City, but they had not decided just where they would go first and all details were subject to change. They had not worked out the route for the trip. Seltzer furnished the car, but all three boys shared the expense for gasoline and oil. Each boy would pay for his own food and lodging. Brown planned to fly from Mexico to California and the other boys were going to take a leisurely sightseeing trip back through the United States to New York. There was testimony that Brown's family expected him to reach California around the 25th of July.

After they began the trip, each boy alternated between driving, sleeping, and navigating, that is, reading the road maps, watching for road signs, and talking to the driver. Prior to the collision they had been on the road about 36 hours. They had made a number of stops for gasoline, food and coffee. They had stopped in Beaumont, Texas, for several hours to visit a relative of Kalotkin a short time before the collision.

Appellee testified that he would not have made the trip if he had not found these boys to share the expense and driving, and that each boy had an equal "say" as to the

route to be followed. He agreed that "everyone carried his equal load as far as the driving and control of the car." There was testimony that Brown had in his wallet a voucher for a refund on an airline ticket from New York to San Francisco, which he had returned, and a ticket "that had an open date on it to fly from Mexico City to San Francisco."

Appellants contend that the substantive law of New York should have been followed by the trial court because New York is the state having the most significant total relationship with this trip. The doctrine of most significant contacts holds that the most significant relationship with the occurrence, and with the parties, should determine the rights and liabilities of the parties. This is clearly contrary to the general rule followed in Texas that the courts look to the law of the place where the wrongful act or neglect took place. Marmon v. Mustang Aviation, Inc., 416 S.W.2d 58 (Tex.Civ.App., Austin 1967, writ granted).

In the case above cited Justice O'Quinn carefully reviewed the applicable authority and found much merit in the doctrine under consideration. We are in full agreement with this carefully considered opinion and can add nothing to it by again discussing the authorities. We do not consider that this Court is free to repudiate prior decisions of the Supreme Court of Texas despite the fact that it has granted a writ of error in the case cited. In view of this fact, however, it is appropriate to consider facts which distinguish this case from Marmon v. Mustang Aviation, Inc., supra.

Troy Brown was a resident of California, and appellants are also residents of California. The defendant is a resident of New York. Art. 4678, V.A.T.S., is not applicable to this case. Appellants choose to bring this suit in Texas under the Texas wrongful death statute (Art. 4671, V.A.T.S.). The public policy of Texas with reference to actions by guests has been declared by the legislature in the enactment of Art. 6701b, V.A.T.S., generally known as the "guest statute". This statute requires a finding of gross negligence for a recovery in such an action. In the decisions applying the significant contacts doctrine, to which we have been cited, the court was applying the public policy of its state by invoking the law of the forum in preference to the lex loci delicti, which was contrary to its public policy. Macey v. Rozbicki, 18 N.Y.2d 289, 221 N.E.2d 380 (1966); Clark v. Clark, 107 N.H. 351, 222 A.2d 205 (1966); Griffith v. United Air Lines, Inc., 416 Pa. 1, 203 A.2d 796 (1964); Babcock v. Jackson, 12 N.Y.2d 473, 191 N.E.2d 279 (1963).

We recognize that public policy of the state of Texas should not be the prime consideration in determining whether or not the guest statute of this State should be enforced in the event an action is brought in this State to enforce a right of action which accrued under the laws of another state. We cannot say that to enforce a cause of action by a guest against his host based on simple negligence would be against good morals or natural justice, or that for some other such reason the enforcement of such a cause of action would in all such cases be prejudicial to the general interests of our own citizens. State of California v. Copus, 309 S.W.2d 227 (Tex. Sup.1958); McElreath v. McElreath, 345 S.W.2d 722 (Tex.Sup.1961).

In this case, however, the cause of action accrued in Texas and the suit has been filed in the courts of Texas. The state of the forum is applying its own law to a cause of action arising within the State. No conflict of laws problem appears. We find no sound reason for ignoring the public policy of the State as determined by the legislature of this State. Kell v. Henderson, 26 A.D.2d 595, 270 N.Y.S.2d 552 (S.Ct., Appellate Div., 3rd Dept., N.Y.1966).

The remaining points of error concern the manner in which issues relating to the

Texas guest statute were submitted to the jury.

■ The burden of proof was on appellants to prove all elements of their case. Estate of Coggins v. Livingston, 411 S.W. 2d 646 (Tex.Civ.App., Beaumont 1967, n. w. h.). As an element of a passenger case when he sues the driver of an automobile, he must show that he was not a guest as contemplated by the guest statute, or that the driver was guilty of gross negligence. Fuller v. Wainwright, 415 S.W.2d 234 (Tex.Civ.App., El Paso 1967, n. w. h.). Issues were submitted to the jury in answer to which the jury found that Troy Brown was a guest. Appellants did not plead gross negligence, or request issues on that theory of recovery. Appellants did object to the definition of the word "guest" given in connection with the issue submitted, and also requested the submission of certain issues which they suggest would negative the relationship of host and guest. These issues were refused.

There is evidence that the parties to the trip had agreed to share expenses and to share the driving of the automobile. The first Texas case to determine whether or not an agreement to share operating expenses is sufficient to take the case out of the purview of the guest statute was Raub v. Rowe, 119 S.W.2d 190 (Tex.Civ.App., El Paso 1938, error refused). In holding that the sharing of expenses did not take the passenger out of the operation of the guest statute, the court quoted with approval an excerpt from the opinion of the Supreme Court of California in McCann v. Hoffman, Cal.App., 62 P.2d 401; id. 9 Cal.2d 279, 70 P.2d 909, including the following:

"Therefore, where a special tangible benefit to the defendant was the motivating influence for furnishing the transportation, compensation may be said to have been given. But it is not given where the main purpose of the trip is the joint pleasure of the participants. The payment of a portion of the expense, as for gasoline and oil consumed on the trip, is merely incidental and does not constitute the moving influence for the transportation. The provocation for the offer of transportation remains the joint social one of reciprocal hospitality or pleasure."

The Supreme Court of Texas has expressly approved the statement that to remove a case from the provisions of the guest act, a definite relationship must be established and a definite tangible benefit to the operator shown to have been the motivating influence for furnishing the transportation. Burt v. Lochausen, 151 Tex. 289, 249 S.W.2d 194 (Tex.Sup.1952).

This Court, in affirming a summary judgment for the defendant in the case of Dietrich v. F. R. Young Company, 400 S. W.2d 572 (Tex.Civ.App., Houston 1966, writ ref., n. r. e.), stated:

"In the present case the undisputed testimony shows that the motivating cause of the trip, and certainly the main purpose, was mutual pleasure not connected in any way with any business transaction. No definite tangible benefit to Jackson was shown to have been the motivating influence for furnishing the transportation."

The importance to be attached to the purpose of the trip, and to the motivating influence for furnishing the transportation is illustrated by Burnett v. Howell, 294 S. W.2d 410 (Tex.Civ.App., El Paso 1956, writ ref., n. r. e.). There the court, in speaking of Raub v. Rowe, supra, said:

"That case holds and we concede it to be well settled law, that when one is invited to ride with the owner on a trip for their mutual pleasure that the payment for the gas and oil or a portion thereof even though by prior agreement, is merely an exchange of courtesies, and that such would not constitute payment for transportation under the meaning of said Article 6701b. In the case of Raub v. Rowe, supra, the moving and prime cause of the trip to be taken was a mutual desire of the parties to visit a relative. The

payment by the rider of a portion of the automobile expense was merely incidental."

The court went on to point out that in the case under consideration the owner desired to go to Andrews, Texas, to see a friend, but could not go because he had no gasoline. The plaintiff offered to buy him a tank of gas if he would carry plaintiff to Andrews and bring him back. The plaintiff was interested in transacting business, and was not interested in visiting the owner's friend. The court said: "The tangible benefit to appellee was the tank of gas, which was the motivating influence for appellee to furnish appellant the transportation, not joint social purpose or reciprocal hospitality."

In this case, in addition to the agreement to share expenses, we have an agreement to share the burden of driving, and testimony as to a certain measure of joint control. There is also the fact that Brown was going to California in any event, and that Seltzer could not have made the trip had he not found others to share the expense.

Under the same circumstances, sharing the driving on a trip would constitute reciprocal hospitality just as does sharing the incidental expense.

■ We agree with appellants' contention that where there is a joint interest in the object and purpose of the enterprise, the primary purpose of the trip is not a social one, and there is an equal right, express or implied, to direct and control the conduct of each other in the operation of the conveyance, then the existence of joint enterprise may render the provisions of the guest statute inapplicable in a suit by a passenger against the operator of the automobile. El Paso Electric Co. v. Leeper, 60 S.W.2d 187 (Tex.Com.App.1933); Johnson v. Smither, 116 S.W.2d 812 (Tex.Civ.App., Ft. Worth 1938, error dism.).

We have concluded, however, that there was no evidence that the primary purpose of the trip was other than social. While

the testimony of Seltzer that such was the primary purpose is not binding on appellants, there is no competent evidence to support a contrary finding. Troy Brown had planned to return to California from New York by plane. He changed this plan and delayed his return by joining in the trip to Mexico. He was to leave his companions and go to San Francisco, California, by plane from Mexico City. In view of the adoption of this longer, more time consuming route, the fact that the trip was to constitute a part of Brown's journey home would not be evidence that the primary purpose of the trip was other than social.

There is no evidence of the cost of transportation by plane from Mexico City to San Francisco, or from New York to San Francisco. There is no evidence of the probable cost of the gasoline, oil, food, or lodging required during the motor trip from New York to Mexico City. There is no evidence for comparative purposes of the cost of transportation by train or motor bus from New York to San Francisco. In the absence of some such evidence, there is no evidence of probative force from which the jury could infer that Troy Brown would save money by traveling with appellee. The only reasonable inference that can be drawn from the evidence is that the primary purpose of the trip was social in nature. There is no evidence, therefore, to raise an issue of fact of a special tangible benefit to appellee, and there is no evidence to raise an issue of fact of joint enterprise between appellee and Troy Brown.

■ Considering only that evidence favorable to appellants, we find that Brown was a guest within the meaning of the Texas Guest Statute. Since an instructed verdict for the appellee would have been proper, any error in the court's charge was harmless error. Thweatt v. Ocean Accident & Guarantee Corporation, 62 S.W.2d 250 (Tex.Civ.App., El Paso 1933, err. ref.); American Nat. Bank of Austin, Texas v. Sheppard, 175 S.W.2d 626 (Tex.Civ.App.,

Austin 1943, err. ref.); Bassmer v. Kotulek, 75 S.W.2d 295 (Tex.Civ.App., Eastland 1934).

The judgment of the Trial Court is affirmed.